**AIRPRO DIAGNOSTICS, LLC**
**v.**
**DREW TECHNOLOGIES, INC., et al.**

# EXHIBIT B

**TO COMPLAINT AND JURY DEMAND**

## MUTUAL PARTY AGREEMENT

### DREW TECHNOLOGIES, INC.
### CONFIDENTIAL INFORMATION NON-DISCLOSURE AGREEMENT

This agreement is entered into and on February 10, 2017 between Drew Technologies, Inc. ("DREW TECH"), and AirPro Diagnostics, LLC ("AIRPRO").

1. In connection with a possible transaction (the "Transaction") between DREW TECH and AIRPRO, both DREW TECH and AIRPRO desire to enter into confidential discussions regarding exploration of opportunities related to automotive flash programming and scanning (the "Transaction"). DREW TECH and AIRPRO are individually referred to herein as a "Party" and collectively as the "Parties".

2. In order to facilitate the Purpose (as defined below), DREW TECH and AIRPRO, may disclose to each other certain information, documents, business strategies, pricing, techniques, computer programs, methods, drawings, formulas, specifications, software, or other data of a business or technical nature, in oral, electronic and/or written format. Each Party considers all such information disclosed to the other Party to have value as its confidential and/or proprietary property (hereinafter referred to collectively as "Information"). The Parties intend that this Agreement govern the rights and obligations concerning the use and protection of Information which one Party (the "Discloser") discloses to the other Party (the "Recipient"), and agree as follows:

3. The Information, which DREW TECH may disclose hereunder, may include, but is not limited to:

   Confidential financial proprietary information, proprietary hardware and software design and know-how, confidential product information (including but not limited to DREW TECH's flash and programming tools, applications, and derivative products), confidential business and market information, and other proprietary confidential or non-public information furnished in oral, visual, written and/or other tangible form. Information shall include but not be limited to operating specifications, product specifications, strategic marketing and pricing information.

4. The Information which AIRPRO may disclose hereunder may include, but is not limited to:

   Confidential financial proprietary information, proprietary hardware and software design and know-how, confidential product information (including but not limited to AIRPRO's flash and programming tools, applications, and derivative products), confidential business and market information, and other proprietary confidential or non-public information furnished in oral, visual, written and/or other tangible form. Information shall include but not be limited to operating specifications, product specifications, strategic marketing and pricing information.

5. Any Information disclosed under this Agreement shall be used solely for the purposes of:

   Evaluations, discussions, and potential partnerships between DREW TECH and AIRPRO relating to the areas of automotive products (the "Purpose").

6. Recipient shall not disclose or attempt to disclose any of the Discloser's Information except to its employees, directors, officers, parents and affiliates, and consultants with a need to know, and will use the received Information only for the Purpose. Prior to disclosing any Information to any of the Recipient's parents, affiliates, employees, officers, directors, and consultants, such recipient shall agree, in writing signed by said recipient, to be bound by the terms and conditions of this Agreement. If Recipient anticipates disclosing any of Discloser's Information to any non-employee, officer, or director, Recipient shall first obtain, in writing, the consent of Discloser. Discloser shall have the right, for any reason or no reason, to withhold consent of such disclosure.

7. For a period of three (3) years following the expiration of this Agreement, the Recipient shall hold in confidence and, except as set forth herein, shall neither disclose any Information nor authorize or assist in any disclosure of Information.

8. Recipient agrees to prevent the unauthorized use or disclosure of Information received under this Agreement using the same degree of care employed to protect its own confidential or proprietary information of a similar nature but in no event less than reasonable care. Recipient agrees to advise its employees or consultants to whom the Information is disclosed of the confidential nature of the Information and their obligations concerning use and disclosure.

9. For a period of three (3) years following the expiration of this Agreement, Recipient agrees not to prepare or attempt to prepare any works derived, whether in whole or in part, from the Information received from the Disclosure without the prior written consent of the Discloser. If at any time the Recipient produces works or products related to the Information, the Recipient shall have the burden of proving through competent evidence the independent development of such works by Recipient's employees having no access to the Discloser's Information.

10. Each Party will mark any documentary or tangible Information considered confidential or proprietary as "Confidential" or "Proprietary" at the time of disclosure. If Information is disclosed verbally, the disclosing Party identifying such Information as confidential and proprietary under this Agreement at the time of disclosure and will reduce such Information to writing within forty-five (45) days of the date of disclosure.

11. Neither Party is obligated to disclose any Information to the other. Nothing in this Agreement will be construed to grant a license to or ownership interest in any Information disclosed. All Information remains the sole property of the Discloser and at any time upon the request of the Discloser shall be returned or destroyed, at the option of the Discloser.

12. The above restrictions shall not apply to Information that:
    a. Is shown to be in the public domain in one integrated document at the time of receipt hereunder;
    b. Subsequently enters the public domain without breach hereof by Recipient or a third party who has a duty of confidentiality to the Recipient;
    c. Is independently developed by Recipient without access to or knowledge of the Confidential Information. The Recipient shall have the burden of proving through competent evidence the independent development of the subject Information by Recipient's employees having no access to the Discloser's Information; or
    d. Is required to be produced pursuant to a valid court order, law or regulation ("Order"). The Party receiving such Order will, prior to disclosure, notify the other Party in writing of the Order. Such production shall be produced subject to a confidentiality legend.

    If the above exclusions apply to only a portion of the Information, then only that portion shall be excluded from the restrictions contained herein.

13. Neither Party shall have any obligation hereunder to purchase, sell, license, transfer or otherwise dispose of any technology, services or products or enter into any other agreement.

14. This Agreement shall not be assigned by either Party without the express written consent of the other Party. Recipient agrees to comply with all applicable U.S. Export Laws and Regulations.

15. Each Party warrants it has the legal right to disclose the Information under this Agreement. ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED ARE DISCLAIMED. ALL INFORMATION DISCLOSED HEREUNDER IS PROVIDED "AS IS". DISCLOSER ACCEPTS NO RESPONSIBILITY FOR LOSSES OR EXPENSES INCURRED AS A RESULT OF USE OF THE INFROMATION RECEIVED.

16. This Agreement shall remain in effect for the period of one (1) years from the date hereof and is not subject to early termination. However, the duty to remain Information as confidential shall survive for three (3) years following the termination of this Agreement.

17. At all times, the Parties are independent contractors and no partnership, joint venture, agency or other relationship is intended. Each Party reserves the right, in its sole and absolute discretion, to reject any and all

2

17. ... proposals made by the other Party with regard to the Purpose and to terminate discussions and negotiations with the other Party at any time. No Party shall have rights or obligations of any kind whatsoever with respect to the Purpose by virtue of this Agreement other than for the matters specifically agreed to herein.

18. Each Party recognizes that the other Party would be seriously, immediately, and irreparably harmed and damaged if any unauthorized use was made of the Information, or if the Information were disclosed, without the Discloser's consent, to any third party. In the event this Agreement is breached or threatened to be breached, the non-breaching Party shall be entitled to injunctive relief (including, without limitation, temporary restraining orders and injunctions), to enforcement by specific performance of this Agreement, and to damages including, but not limited to, its or their reasonable attorneys' fees.

19. This Agreement shall be governed by the laws of Michigan, excluding its conflict of laws rules, and the Parties consent jurisdiction in the state and federal courts in the State of Michigan.

20. The prevailing Party in any legal action brought before any state or federal court of competent jurisdiction shall be entitled to an award by such court of such prevailing Party's reasonable attorneys' fees and costs from the non-prevailing Party in any such legal action.

21. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile shall be deemed to be their original signatures for any purpose whatsoever.

22. The foregoing constitutes the entire agreement of the Parties on the subject matter and supersedes all other agreements or understandings whether written or verbal. This Agreement shall not be changed except by written amendment executed by the Parties.

**ACCEPTED AND AGREED:**

**DREW TECHNOLOGIES, INC.**

By: Brian Herron, President
Signature: [signature]
Date: 2-13-17

AIRPRO DIAGNOSTICS, LLC.

By: Lonnie Margol, CEO
Signature: [signature]
Date: 2-13-17

3