# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION
### No. 2:22-CV-12969-LVP-EAS

| | | |
|---|---|---|
| AIRPRO DIAGNOSTICS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-12969 |
| v. | ) | |
| | ) | District Judge Linda V. Parker |
| DREW TECHNOLOGIES, INC., a | ) | Magistrate Judge Elizabeth A. Stafford |
| Michigan corporation, OPUS IVS, | ) | |
| INC., a Delaware corporation, | ) | |
| AUTOENGINUITY, LLC, an | ) | |
| Arizona limited liability corporation | ) | |
| and BRIAN HERRON, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

Adam J. Brody (P62035)
Ziyad I. Hermiz (P72236)
Varnum LLP
260 E. Brown St., Ste. 150
Birmingham, MI 48009
248-567-7800
zihermiz@varnumlaw.com

William J. Stapleton (P38339)
Rachel N. Hanson (P82828)
Hooper Hathaway, PC
126 S. Main Street
Ann Arbor, MI 48104
734-662-4426
wstapleton@hooperhathaway.com
rhanson@hooperhathaway.com

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

NOW COMES Defendants Opus IVS, Inc. and Brian Herron (collectively, "Defendants"), by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby file this Motion to Dismiss

Plaintiff AirPro Diagnostics, LLC's Complaint for failure to state a claim upon which relief can be granted.

In support of this Motion, Defendants have filed their Brief in Support of their Motion to Dismiss, in accordance with LR 7.1(d), contemporaneously herewith.  For the reasons stated above, and as fully detailed in the accompanying Brief, Defendants request that the Court dismiss Plaintiff's Complaint with prejudice.

WHEREFORE, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted, this the 13th of January, 2023.

Respectfully submitted,

BY:   /s/William J. Stapleton
       William J. Stapleton (P38339)
       Rachel N. Hanson (P82828)
       HOOPER HATHAWAY, P.C.
       126 South Main Street
       Ann Arbor, MI 48104
       (734) 662-4426
       wstapleton@hooperhathaway.com
       rhanson@hooperhathaway.com
       Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

I declare that the above statements are true to the best of my knowledge, information and belief.

BY:   /s/William J. Stapleton
William J. Stapleton (P38339)
Rachel N. Hanson (P82828)
HOOPER HATHAWAY, P.C.
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426
wstapleton@hooperhathaway.com
rhanson@hooperhathaway.com
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION
### No. 2:22-CV-12969-LVP-EAS

| | | |
|---|---|---|
| AIRPRO DIAGNOSTICS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-12969 |
| v. | ) | |
| | ) | District Judge Linda V. Parker |
| DREW TECHNOLOGIES, INC., a | ) | Magistrate Judge Elizabeth A. Stafford |
| Michigan corporation, OPUS IVS, | ) | |
| INC., a Delaware corporation, | ) | |
| AUTOENGINUITY, LLC, an | ) | |
| Arizona limited liability corporation | ) | |
| and BRIAN HERRON, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

Adam J. Brody (P62035)
Ziyad I. Hermiz (P72236)
Varnum LLP
260 E. Brown St., Ste. 150
Birmingham, MI 48009
248-567-7800
zihermiz@varnumlaw.com

William J. Stapleton (P38339)
Rachel N. Hanson (P82828)
Hooper Hathaway, PC
126 S. Main Street
Ann Arbor, MI 48104
734-662-4426
wstapleton@hooperhathaway.com
rhanson@hooperhathaway.com

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendants Opus IVS, Inc. ("Opus") and Brian Herron ("Mr. Herron") (collectively "Defendants") respectfully submit this Brief in Support of Their Motion to Dismiss Plaintiff AirPro Diagnostics, LLC's ("AirPro's") Complaint.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

COMPLIANCE WITH E.D. MICH. L.R. 7.1(a)...................................... vi

CONCISE STATEMENT OF ISSUES PRESENTED .......................... vii

STATEMENT OF CONTROLLING AUTHORITY............................. viii

Introduction ...............................................................................................1

Relevant Facts ...........................................................................................2

I.   AutoEnginuity, Drew, and AirPro's Relationships .........................2

II.   AirPro's unlawful misrepresentations of AutoEnginuity's Giotto Product. .4

III.   AutoEnginuity implements a new EULA to address AirPro's unlawful misrepresentations of AutoEnginuity's Giotto Product. ......................................5

IV.   Opus repeatedly warns AirPro that continued misrepresentation of AutoEnginuity's Giotto Product will lead to termination of AirPro's License. ....5

Standard of Review....................................................................................7

Argument....................................................................................................8

I.   This Court should dismiss each of Plaintiff's claims for failure to state a claim upon which relief can be granted..................................................................9

   A.   Plaintiff has failed to state a claim for tortious interference with business expectancy. .......................................................................................9

   B.   Plaintiff has failed to state a claim for common law unfair competition.17

C.    Plaintiff has failed to state a claim for breach of contract because the

Complaint fails to allege facts showing breach. ...............................................23

CONCLUSION ............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001) ...........................................8

*ANT Hi-Tech Indus. Co. Ltd. v. Med. Imaging Solutions Int'l Co.*, No. 15-cv13751,
    2016 WL 10592260 (E.D. Mich. May 25, 2016) ..................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ passim

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710 (6th Cir.
    2018) ............................................................................................................ 10, 11

*Beirut Traders Co. v. The Neiman Marcus Group, Inc.*, No. 2:09-cv-11176, 2009
    WL 3460674 (E.D. Mich. Oct. 22, 2009) ..............................................................14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................... passim

*Best Label Company, LLC v. Custom Label & Decal,* LLC, No. 19-CV-03051-
    LHK, 2021 WL 981255 (N.D. Cal. Mar. 16, 2021) ................................................2

*Bestop, Inc. v. Tuffy Sec. Products, Inc.*, No. 13-10759, 2014 WL 172299 (E.D.
    Mich. Jan. 15, 2014) ..................................................................................... 23, 24

*Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114 (6th Cir.
    1979) .....................................................................................................................17

*Dalley v. Dykema Gossett, P.L.L.C.*, 788 N.W.2d 679 (Mich. Ct. App. 2010).......15

*Dassault Systemes, SA v. Childress*, 828 F. App'x 229 (6th Cir. 2020) .................10

*Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461 (6th Cir. 2014)............16

*Flint Cold Storage v. Dep't of Treasury*, 285 Mich. App. 483, 776 N.W.2d 387
    (2009)......................................................................................................................2

*Geiling v. Wirt Fin. Servs., Inc.*, No. 14-11027, 2014 WL 8473922 (E.D. Mich. Dec. 31, 2014) ........................................................................................14

*Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008)........................................18

*Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345 (Mich. Ct. App. 2013) ........11

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008) ..................................................8

*Literati, LLC v. Literati, Inc.*, No. 20-12764, 2021 WL 122209 (E.D. Mich. Mar. 24, 2021)......................................................................................................13

*Mourad v. Marathon Petroleum Co. LP*, 129 F. Supp. 3d 517 (E.D. Mich. 2015), *aff'd*, 654 F. App'x 792 (6th Cir. 2016) ........................................................ 15, 16

*Nieman v. NLO*, Inc., 108 F.3d 1546 (6th Cir.1997) ................................................8

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................8, 9

*Posh Entertainment, Inc. v. Eton Street Restaurant, Inc.*, No. 06-11991, 2007 WL 9811145 (E.D. Mich. Dec. 14, 2007) ...................................................16

*Primary Ins. Agency Gr., LLC v. Nofar*, No. 320039, 2015 WL 1227767 (Mich. Ct. App. Mar. 7, 2015) ....................................................................................18

*Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.*, No. 11-cv-15326, 2012 WL 1931519 (E.D. Mich. May 29, 2012) .............................................12

*Rockwell Medical, Inc. v. Yocum*, 76 F. Supp. 3d 636 (E.D. Mich. 2014)....... 11, 14

*Visions Auto Glass, Inc. v. Safelite Solutions, Inc.*, No. 1:10-cv-00791, 2012 WL 13184337 (W.D. Mich. July 13, 2012)................................................11

*Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281 (6th Cir. 2010)....................................................................................................11

*Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815 (6th Cir. 1999)...............23

*Weitting v. McFeeters*, 304 N.W.2d 525 (Mich. Ct. App. 1981) ...........................11

**Rules**

FED. R. CIV. PRO. 12(b)(6) ...........................................................................7

FED. R. CIV. PRO. 8(a)(2) .............................................................................. 7, 22, 25

## <u>COMPLIANCE WITH E.D. MICH. L.R. 7.1(a)</u>

The parties' counsel conferred with one another under L.R. 7.1(a) before Defendants filed this motion.  Counsel for Defendants explained the nature of this motion and its legal basis.  Counsel for Defendants requested, but did not obtain, Plaintiff's concurrence in the relief sought.

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1. Should this Court dismiss Plaintiff's first claim against Defendant Drew Technologies, Inc. because Plaintiff has failed to state a claim for breach of contract under Michigan law?

   Defendants Answer: Yes

2. Should this Court dismiss Plaintiff's second claim against all Defendants because Plaintiff has failed to state a claim for common-law unfair competition under Michigan law?

   Defendants Answer: Yes

3. Should this Court dismiss Plaintiff's third claim against all Defendants because Plaintiff has failed to state a claim for tortious interference with business expectancy under Michigan law?

   Defendants Answer: Yes

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Under Local Rule 7.1(d)(2), Defendants identify the following cases are the controlling and most appropriate authority for the relief sought:

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

- *Auburn Sales, Inc. v. Cypros Trading & Shipping Inc.*, 898 F.3d 719 (6th Cir. 2018).

- *Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114 (6th Cir. 1979)

- *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007)

- *Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.*, No. 11-cv-15326, 2012 WL 1931519 (E.D. Mich. May 29, 2012)

- *Rockwell Medical, Inc. v. Yocum*, 76 F. Supp. 3d 636 (E.D. Mich. 2014)

- *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014 (E.D. Mich. 2017)

- *Bestop, Inc. v. Tuffy Sec. Products, Inc.*, No. 13-10759, 2014 WL 172299 (E.D. Mich. Jan. 15, 2014)

- *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759 (E.D. Mich. 2010)

- *Primary Ins. Agency Gr., LLC v. Nofar*, No. 320039, 2015 WL 1227767 (Mich. Ct. App. Mar. 7, 2015)

## INTRODUCTION

This lawsuit is an attempt by AirPro to shift the blame for *its own* unlawful misrepresentations of Defendants' Giotto aftermarket scan tool diagnostic software (the "Giotto Product") to Defendants.  AirPro developed a business model in which it became heavily dependent on the continued licensing and use of Defendants' Giotto Product.  Importantly, however, AirPro failed to develop a business model that represented and used Defendants' Giotto Product lawfully.

Not only did AirPro's misrepresentations of Defendants' Giotto Product jeopardize Defendants' business brands and integrity, they also infringed on Ford's world-famous BlueOval trademark, thereby threatening Ford's business brand and integrity. Most importantly, however, AirPro's misrepresentations of Defendants' Giotto Product threatened the safety of automobile consumers nationwide.

Defendants and AirPro were business partners and enjoyed a working business relationship.  The Exhibits to Plaintiff's Complaint reveal continued efforts by Defendants to preserve those relationships.  But when AirPro time-after-time refused to stop misrepresenting and misusing Defendants' Giotto Product, Defendants were left with no choice but to terminate AirPro's license and continued right to use the Giotto Product.  Far from being unlawful, Defendants' actions were necessary and motivated by clearly legitimate business concerns. Defendants' actions were not only rightfully motivated by self-preservation concerns, but were

also undertaken to protect Ford's rights, the rights of other original equipment manufacturers ("OEMs"), and the safety of the American automobile consumer.

## RELEVANT FACTS

Opus IVS, Inc. ("Opus") is a conglomerate of various entities in the field of automotive repair. (ECF No. 1, PageID.6, ¶27). AutoEnginuity, LLC ("AutoEnginuity") and Drew Technologies, Inc. ("Drew") are former subsidiaries of Opus that merged into Opus on December 31, 2020.[1] *Id.* Brian Herron ("Mr. Herron") is the President of Opus. (*Id.* at PageID.6, ¶ 28).

## I. AutoEnginuity, Drew, and AirPro's Relationships

AirPro Diagnostics, LLC ("AirPro") is the distributor of a device (the "CompuFlash device"), originally developed by CompuFlash, LLC, which provides automotive repair shops with the ability to perform module programming and multi-vehicle remote diagnostic and calibration repair services. (*See id.* at PageID.5-6, ¶¶ 17-20). Drew offers the "Remote Assistance Program" product (the "RAP product"),

---

[1] Certificates of Merger are public records of which this Court can take judicial notice. *See, e.g., Best Label Company, LLC v. Custom Label & Decal,* LLC, No. 19-CV-03051-LHK, 2021 WL 981255, at *2 (N.D. Cal. Mar. 16, 2021) (taking judicial notice of certificates of merger). Drew merged into Opus on December 31, 2020, as evidenced by the Certificate of Merger attached hereto as Ex. A. Drew is thus no longer a party to the Mutual Party Agreement between Drew and AirPro, and the Contract cannot support a breach of contract claim against Drew. *See* MCL 450.1736(9)(a) ("When a merger takes effect … [e]very other entity party to the merger merges into the surviving entity and the separate existence of every entity party to the merger except the surviving entity ceases[.]"); *Flint Cold Storage v. Dep't of Treasury*, 285 Mich. App. 483, 498, 776 N.W.2d 387, 396 (2009) ("After the termination of the existence of a corporation, no action can be maintained against it, and it has no capacity to sue.") (emphasis and internal citation omitted). Further, Plaintiff's common-law unfair competition and tortious interference with business expectancy claim against Drew should be dismissed as well, as Drew no longer exists and can no longer sue or be sued. *See id.* AutoEnginuity also merged into Opus on December 31, 2020, as evidenced by the Certificate of Merger attached as Ex. B. Thus, AutoEnginuity no longer exists, can no longer sue or be sued, and Plaintiff's claims for common-law unfair competition and tortious interference with business expectancy against AutoEnginuity should be dismissed. *See id.*

which has capabilities similar to those of the CompuFlash device. (*See id.* at PageID.7, ¶ 32).

AirPro's Compuflash device uses AutoEnginuity's Giotto aftermarket scan tool diagnostic software (the "Giotto Product"). (*See id.* at PageID.5, ¶¶ 21-22). AirPro and AutoEnginuity thus had a working relationship whereby AutoEnginuity licensed its Giotto Product to AirPro pursuant to an End User License Agreement (the "old EULA"). (*See id.* at PageID.5-6, ¶¶ 22, 24, 29). The CompuFlash device also uses Drew's "Cardaq" J2534 interface. (*See id.* PageID.5, ¶ 20).

In 2017, Drew and AirPro entered into a Mutual Party Agreement (the "Contract") whereby the parties agreed to exchange business information with one another to explore potential partnership or acquisition opportunities, and such information was to be used only for the purpose of evaluations, discussions, and potential partnerships between Drew and AirPro. (*See id.* at PageID.7, ¶¶ 34-35; ECF No. 1-2, PageID.22-25). The Contract had a one-year term, but also imposed restrictions on the parties for a period of three years following expiration of the Contract. (ECF No. 1, PageID.8, ¶ 37). These restrictions prevented the parties from attempting to prepare works derived from the information received without the disclosing party's consent. (*Id.*; *see also* ECF No. 1-2, PageID.22-25).

In its Complaint, Plaintiff vaguely alleges "Drew Technologies took information obtained from AirPro under the Mutual Party Agreement and

3

wrongfully exploited it for its own benefit" and used that information "to directly compete with AirPro in the field of remote diagnostic services." (*See* ECF No. 1, PageID.8-9, ¶¶ 39, 43).

## II.    AirPro's unlawful misrepresentations of AutoEnginuity's Giotto Product.

On or about February 27, 2020, Ford Motor Company ("Ford") and a related entity filed a lawsuit in this Court against AirPro, asserting claims for trademark infringement, false designation of origin, unfair and deceptive trade practices in violation of Michigan statutory and common law, copyright infringement, and breach of contract. (*See id.* PageID.11, ¶ 56).  In that lawsuit, *Ford Motor Co. et al. v. AirPro Diagnostics LLC*, case number 20-CV-10518, this Court granted Ford's motion for partial summary judgment as to liability on Ford's trademark dilution and trademark infringement claims, among others.  A copy of that Opinion and Order is attached hereto as <u>Exhibit C</u>.  Ford's trademark infringement claim was specifically premised on AirPro's alleged use of "precise replicas of Ford's trademarks to pass off [AutoEnginuity's] aftermarket software as Ford Diagnostic Software." (*See id.*; Ex. C, at 2).

In granting partial summary judgment as to liability on Ford's trademark infringement claim, this Court found that AirPro had unlawfully used Ford Marks in representing AutoEnginuity's Giotto Software—an aftermarket software—as OEM software. (*See* Ex. C, at 10, 29).  This Court concluded: "It cannot be disputed that

4

… AirPro set out to identify Ford as one source of OEM software used on its scan tool, not just to claim that its scan tool is compatible with Ford's Diagnostic Software." (*Id.* at 29). AirPro's trademark infringement of Ford's Marks necessarily entailed a misrepresentation of AutoEnginuity's Giotto Software as OEM. (*See id.*)

### III. AutoEnginuity implements a new EULA to address AirPro's unlawful misrepresentations of AutoEnginuity's Giotto Product.

In December 2020, AutoEnginuity implemented a new End User License Agreement (the "new EULA") governing AirPro's use of the Giotto Product. (*See* ECF No. 1, PageID.10, ¶ 52). The new EULA specifically prohibited AirPro from "mak[ing] statements that diagnostic services performed using [AutoEnginuity's Giotto] Software are equivalent to the OE diagnostic system." (*See id.* PageID.11, ¶ 54; ECF No. 1-4, PageID.30-36). In other words, the new EULA specifically prohibited AirPro from attempting to "pass off [AutoEnginuity's] aftermarket software as Ford Diagnostic Software[, for example]." (*See id.*; Ex. C, at 2).

### IV. Opus repeatedly warns AirPro that continued misrepresentation of AutoEnginuity's Giotto Product will lead to termination of AirPro's License.

Opus, as the new entity in privity of contract with AirPro after the AutoEnginuity-Opus merger, repeatedly informed AirPro of Opus's concern that AirPro was misrepresenting the Giotto Product as OEM-equivalent. (*See* ECF Nos. 1-6; 1-7; 1-9; and 1-10). Plaintiff's Exhibit F, a letter provided by Mr. Herron to Ford—per Ford's request—explains Opus did not agree with AirPro's contention in

5

its Interrogatory responses to Ford that "the AutoEnginuity Giotto product falls
within [the definition of 'OEM Software']." (*See* ECF No. 1, PageID.12, ¶ 62; ECF
No. 1-6, PageID.39-41).  In Plaintiff's Exhibit G (ECF No. 1-7), an August 25, 2021
letter sent to AirPro, Mr. Herron explained:

> [Opus] remain[s] concerned that the lawsuit filed by Ford Motor Company
> against AirPro indicates that AirPro claims to perform OE Scans using the
> AutoEnginuity Giotto products and software, and that AirPro's actions may
> be subjecting Opus IVS to potential liability … [Opus] believes that AirPro's
> statements are falsely representing AutoEnginuity products and services.

(*See* ECF No. 1, PageID.12,  ¶ 63; ECF No. 1-7, PageID.43).  In the August 25, 2021
letter, Mr. Herron also warned AirPro that its continued misrepresentations of
AutoEnginuity's Giotto Product would leave Opus with "no choice but to terminate
AirPro's software license[.]" (*See id.*).  Plaintiff's Exhibit I, an October 4, 2021 letter
from Mr. Herron to AirPro, again shows Opus's concern.  Specifically, Mr. Herron
explained:

> [AirPro's] response to the motion for summary judgment [in *Ford Motor Co.*
> *v. AirPro Diagnostics, LLC*] amplifies that AirPro's position with respect to
> OEM is entirely inconsistent with ours. We find this troublesome for many
> reasons, and we cannot support any use of our product where it is represented
> as OEM or OEM equivalent, *especially in the determination of vehicle*
> *safety*.

(*See* ECF No. 1, Page ID.13, ¶ 64; ECF No. 1-9, PageID.48) (emphasis added).
Plaintiff's Exhibit J, an October 21, 2021 letter from Mr. Herron to AirPro, further
shows Opus's concern:

6

[Opus has] reminded [AirPro] that AirPro's misleading statements and continued use of the AutoEnginuity Giotto products potentially subjects Opus IVS to claims from third parties.

(*See* ECF No. 1, PageID.14,  ¶ 68; ECF No. 1-10, PageID.51).  The October 21, 2021 letter explained Opus was terminating AirPro's license to and right to use the AutoEnginuity Giotto Product effective October 25, 2021, with "regret that this situation could not be avoided." (*See* ECF No. 1, PageID.14 ¶¶ 68-69; ECF No. 1-10, PageID.51).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. PRO. 12(b)(6).  A complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8(a)(2) requires plaintiffs to plead "a short and plain statement of the claim *showing that the pleader is entitled to relief*, in order to give the defendant fair notice of what the … claim is *and the grounds upon which it rests*."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  To meet this standard, a complaint must contain sufficient factual material, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Iqbal*, 556 U.S. at 678-80 (applying the plausibility standard articulated in *Twombly*).  When considering a motion to dismiss, the Court must construe the complaint in a light most favorable to the

7

plaintiff and accept all the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). But courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *accord Iqbal*, 556 U.S. at 678.

In sum, the factual allegations a plaintiff pleads must, "accepted as true," "plausibly suggest" "unlawful" behavior. *See Iqbal*, 556 U.S. at 680. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although *matters of public record*, orders, items appearing in the record of the case, *and exhibits attached to the complaint*, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis added and in original) (internal citation and quotation marks omitted).

<div align="center">

**ARGUMENT**

</div>

Plaintiff's claim for tortious interference with business expectancy should be dismissed on two separate grounds. First, Plaintiff has not given Defendants fair notice. Second, Plaintiff has failed to allege facts required for several essential elements of a tortious interference claim.

Plaintiff's claim for common-law unfair competition should be dismissed on two separate grounds. First, Plaintiff has not given Defendants fair notice. Second, Plaintiff has failed to allege facts that plausibly suggest unlawful behavior.

Finally, Plaintiff's claim for breach of contract should be dismissed for failure to allege facts showing a breach of contract.

**I.   This Court should dismiss each of Plaintiff's claims for failure to state a claim upon which relief can be granted.**

   **A. Plaintiff has failed to state a claim for tortious interference with business expectancy.**

   **i.   Plaintiff has not given Defendants fair notice of its tortious interference with business expectancy claim.**

Plaintiff's Complaint entirely fails to give Defendants fair notice of the grounds upon which its tortious interference claim rests. *See generally* ECF No. 1. The Complaint merely alleges "Defendants intentionally and wrongfully interfered with [AirPro's business expectancy with respect to its customers and potential customers] through their actions as described above." *See id.* ECF No. 1, PageID.16-17, ¶¶ 84, 86. This is exactly the sort of "legal conclusion couched as a factual allegation" that this Court is not bound to accept as true in evaluating a 12(b)(6) motion. *Papasan*, 478 U.S. at 286.

The Complaint does not name customers, potential customers, or otherwise any intentional or wrongful interference with them. While Plaintiff "describe[s]" various alleged actions by Defendants "above," the Complaint entirely fails to indicate *which* of Defendants' alleged actions constitute tortious interference. Defendants have thus not been given "fair notice of … the grounds upon which

9

[Plaintiff's tortious interference] claim rests," and Plaintiff's tortious interference claim should be dismissed. *See Twombly*, 550 U.S. at 555.

ii. **Plaintiff has failed to allege several essential elements of a tortious interference with business expectancy claim with the requisite specificity.**

Plaintiff's Complaint does not plausibly allege the elements of tortious interference. Under Michigan[2] law, this claim requires:

(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference causing or inducing a termination of the relationship or expectancy; and (4) resultant actual damage.

*Dassault Systems, SA v. Childress*, 828 F. App'x 229, 242 (6th Cir. 2020) (applying Michigan law). The third element carries two distinct sub-requirements: "an *intentional* interference and an *improper* interference." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 716 (6th Cir. 2018) (emphasis in original);

---

[2] Defendants' position is that the new EULA, implemented by AutoEnginuity in December 2020, is a valid and enforceable agreement. Pursuant to the new EULA, "ALL CLAIMS RELATED TO, IN CONNECTION WITH, OR ARISING OUT OF THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES, WHETHER SOUNDING IN **CONTRACT**, **TORT**, **EQUITY**, STATUTORY DUTY, OR OTHERWISE, SHALL BE EXCLUSIVELY GOVERNED AND CONSTRUED IN ACCORDANCE WITH **THE LAWS OF THE STATE OF ARIZONA**, WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES." (emphasis added). Similarly, the old EULA provides: "This Agreement shall be governed by the laws of the State of Arizona." Plaintiff has pled its claims under Michigan law, and this Motion to Dismiss analysis thus analyzes Plaintiff's claims under Michigan law. Whether the Court applies Arizona law or Michigan law with respect to Plaintiff's contract or tort claims, the claims still fail for the reasons discussed *infra* because the nature of a breach of contract, unfair competition claim and tortious interference with business expectancy claim under Arizona law is analogous to the nature of those claims under Michigan law. *E.g.*, Compare *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 124, 970 P.2d 954, 956 (Ct. App. 1998) with *Primary Ins. Agency Gr., LLC v. Nofar*, No. 320039, 2015 WL 1227767, at *5 (Mich. Ct. App. Mar. 7, 2015) and *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs., Inc.*, 216 Ariz. 185, 187 ¶ 7, 164 P.3d 691, 693 (Ct. App. 2007) with *Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 492 Mich. 40, 821 N.W.2d 1, 3 (2012).

*see also Weitting v. McFeeters*, 304 N.W.2d 525, 529 (Mich. Ct. App. 1981) ("The interference must be both intentional and improper.").

"Intentional" interference means that the defendant's purpose or desire was to cause an interference with a business relationship. *Auburn Sales*, 898 F.3d at 716. Courts in Michigan characterize this requirement as an "essential element of a claim of tortious interference." *Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013). "Improper" conduct must be either: "(1) wrongful *per se*; or (2) lawful, but done with malice and unjustified in law." *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010).

The plaintiff "must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference." *Rockwell Medical, Inc. v. Yocum*, 76 F. Supp. 3d 636, 648–49 (E.D. Mich. 2014) (quotation omitted). And whether the plaintiff characterizes the defendant's conduct as wrongful *per se* or lawful but done with malice and unjustified in law, "the interference must be both intentional and improper." *Auburn Sales*, 898 F.3d at 717.

### a. The Complaint fails to allege *any* specific business relationships or expectancies (element 1).

Plaintiff's claim immediately fails on the first element. "[T]he existence of a valid business relationship must be clearly identified in the complaint." *Visions Auto Glass, Inc. v. Safelite Solutions, Inc.*, No. 1:10-cv-00791, 2012 WL 13184337, at *6 (W.D. Mich. July 13, 2012); *see Reliable Carriers, Inc. v. Excellence Auto Carriers,*

11

*Inc.*, No. 11-cv-15326, 2012 WL 1931519, at *2 (E.D. Mich. May 29, 2012) (dismissing tortious interference claim where the claimant "fail[ed] to identify the business relationship or expectancy that was breached or terminated").   Here, Plaintiff alleges only in very broad, unspecific terms that Defendants interfered with its "business expectancy with respect to its customers and potential customers." *See* ECF No. 1, PageID. 16-17, ¶¶ 84, 86.

This self-serving legal conclusion fails. Plaintiff must identify in its Complaint *which* customers Defendants allegedly interfered with. *See Shenzhen ANT Hi-Tech Indus. Co. Ltd. v. Med. Imaging Solutions Int'l Co.*, No. 15-cv13751, 2016 WL 10592260, at *4 (E.D. Mich. May 25, 2016) (dismissing tortious interference claim and emphasizing the claimant's failure to "identif[y] which customers [were] allegedly targeted"); *Reliable Carriers*, 2012 WL 1931519, at *2 (dismissing claim that merely alleged interference with the parties' "common customers").   Plaintiff has not done so, and this claim should thus be dismissed.

### b.  The Complaint fails to allege that Defendants knew of any specific business relationship or expectancy (element 2).

The Complaint fares no better on the second element.  Plaintiff alleges it "had a valid business expectancy with respect to its customers and potential customers in connection with the provision of remote diagnostic services utilizing the Giotto product" and "Defendants were keenly aware of this business expectancy at all relevant times." (*See* ECF No. 1, PageID.17, ¶¶ 85-86).  But the vague and non-

specific wording of that allegation is fatal. Plaintiff fails to allege that Defendant knew of *any* specific business relationships or expectancies. And this failure is unsurprising, given that Plaintiff fails to allege any specific relationships or expectancies in the first place.

In *Literati, LLC v. Literati, Inc.*, this Court dismissed Plaintiff's Complaint for "fail[ure] to plead the knowledge element of its cause of action for tortious interference with specificity[.]" No. 20-12764, 2021 WL 122209, at *4 (E.D. Mich. Mar. 24, 2021). There, the plaintiff contended "defendant 'knew of business relationships and expectancies between Plaintiff and its customers.'" *Id.* at *3. Plaintiff's Complaint even "include[d] 30 examples of customers confusing defendant for plaintiff[.]" *Id.* But the plaintiff failed to allege facts showing that "defendant *knew the identities* of plaintiff's customers." *Id.* (emphasis added).

Like the parties here, the parties in *Literati* were competitors in the same industry. *Id.* But this Court explained:

> The parties in this case are competitors in the field of online subscription book club services. It is therefore plausible that a person who is interested in purchasing an online subscription to a book club is a potential customer of both parties. However … *Defendant's general knowledge of plaintiff's business does not equate to specific knowledge of plaintiff's business relations or expectancies.* The latter is what is required. Here plaintiff offers only bare allegations that defendant had knowledge of the business relationship or expectancy that had been breached. This is not enough to plead the second element of a tortious interference claim.

*Id.* (emphasis added).  Defendants' mere general knowledge of Plaintiff's business (gained through their business relationships with Plaintiff) does not equate to specific knowledge of Plaintiff's business expectancies. Without allegations showing Defendants' knowledge of the relationships or expectancies with which Defendants supposedly interfered, Plaintiff's claim fails on its face. *See Geiling v. Wirt Fin. Servs., Inc.*, No. 14-11027, 2014 WL 8473922 (E.D. Mich. Dec. 31, 2014) (explaining "a bald allegation of an expectancy is a mere legal conclusion, which is not entitled to a presumption of validity under *Twombly*").

### c.  The Complaint fails to allege that Defendants' alleged interference was intentional and improper (element 3).

Perhaps most glaringly, the Complaint fails to allege the third element of tortious interference. It contains no facts suggesting—let alone showing "with specificity," as the law requires, affirmative acts by Defendants that were done intentionally to interfere with Plaintiff's business expectancies *and* were either *per se* wrongful or malicious. *See, e.g., Rockwell*, 76 F. Supp. 3d at 648–49 (rejecting tortious-interference claim under the third element); *Beirut Traders Co. v. The Neiman Marcus Group, Inc.*, No. 2:09-cv-11176, 2009 WL 3460674, at *6 (E.D. Mich. Oct. 22, 2009) (same).

 Plaintiff has summarily concluded: "AirPro had a valid business expectancy with respect to its customers and potential customers in connection with the provision of remote diagnostic services utilizing the Giotto product" with which

14

"Defendants intentionally and wrongfully interfered through their actions described above." ECF No. 1, PageID.16-17,  ¶¶84, 86.  Plaintiff's lone allegation broaching this issue is nothing more than speculation: "*[L]ikely* seeing an opportunity to harm what was now a direct competitor, AutoEnginuity implemented a new End User License Agreement in December 2020." ECF No.1, PageID.10, ¶52 (emphasis added).

Plaintiff's allegations with respect to the third element are mere " 'naked assertions' devoid of 'further factual enhancement.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  These bare and conclusory allegations fail to meet the *Twombly* and *Iqbal* plausibility standard.  What's more, they fail to meet the specific requirements for pleading tortious interference claims under Michigan law. *See Mourad v. Marathon Petroleum Co. LP*, 129 F. Supp. 3d 517, 523–27 (E.D. Mich. 2015), *aff'd*, 654 F. App'x 792, 798–99 (6th Cir. 2016) (dismissing Michigan tortious-interference claim under Rule 12(b)(6) where the complaint's allegations did not "plausibly support the conclusion that Defendant acted with malice or for the purpose of interfering with Plaintiffs' businesses").

As a final nail-in-the-coffin, "[w]here the defendant's actions were motivated by legitimate business reasons, its action would not constitute improper motive or interference." *Mourad*, 129 F. Supp. 3d at 523 (citing *Dalley v. Dykema Gossett, P.L.L.C.*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010)).  Applying that principle,

courts have denied or dismissed tortious-interference claims even where the party allegedly "stole" customers from a competitor. *See*, *e.g.*, *Mourad*, 129 F. Supp. 3d at 525 ("There is nothing inherently wrong or improper about Defendant's desire to expand [its] operations . . . ."); *Posh Entertainment, Inc. v. Eton Street Restaurant, Inc.*, No. 06-11991, 2007 WL 9811145, at *6 (E.D. Mich. Dec. 14, 2007) ("[T]ortious interference does not implicate the workings of capitalism (e.g., Coke may not sue Pepsi for stealing its customers)."); *see also Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461, 464 (6th Cir. 2014) (affirming dismissal of tortious-interference claims where the plaintiff raised "no plausible allegations" that the defendant "was motivated by anything other than its legitimate business purpose" (quotations omitted)).  This case warrants the same result.

Plaintiff's Exhibits F, G, I, and J, discussed *infra*, demonstrate Defendants' actions in implementing the new End User License Agreement and terminating AirPro's license to use the Giotto Product were motivated by legitimate business purposes.  Namely, Opus was motivated by, among other things, (1) the potential liability (for example, a lawsuit by Ford) it could face due to AirPro's misrepresentations of the Giotto Product and (2) the safety risk AirPro's misrepresentations of the Giotto Product posed to the marketplace and the public in the determination of vehicle safety. *See, e.g.*, ECF Nos. 1-9 & 1-10.  Plaintiff's

Exhibits emphatically demonstrate why Plaintiff has not properly pled a tortious interference claim: Plaintiff cannot prove a tortious interference claim.

Far from corroborating an improper motive, all the relevant exhibits to the Complaint corroborate *proper* motives.  And Ford's lawsuit against AirPro and success on the merits in its claims demonstrate Opus's motive in implementing the new EULA and terminating AirPro's license to the Giotto Product was proper, existed for good reason, and was not contrived to harm AirPro's business.  Plaintiff's claim for tortious interference with business expectancy should be dismissed.

**B.  Plaintiff has failed to state a claim for common law unfair competition.**

**i.   Plaintiff has not given Defendants fair notice of its unfair competition claim.**

Plaintiff's Complaint entirely fails to give Defendants fair notice of the grounds upon which its unfair competition claim rests. *See* ECF No. 1, PageID.16, ¶¶ 80-82.  The Complaint merely alleges "[t]he acts of all Defendants described above constitute common law unfair competition under Michigan law." *See id.* PageID.16, ¶ 81.  Significantly, the Complaint entirely fails to indicate *which* of Defendants' alleged acts constitute unfair competition.  This inadequate pleading is especially problematic given the broad and amorphous nature of an unfair competition claim under Michigan law.

"Michigan follows the general law of unfair competition." *Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114, 1118 (6th Cir. 1979).

> [T]he incalculable variety of illegal practices denominated as *unfair competition* is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use. It is a *broad* and flexible doctrine. [T]he essence of unfair competition law is fair play.

*Primary Ins. Agency Gr., LLC v. Nofar*, No. 320039, 2015 WL 1227767, at *5 (Mich. Ct. App. Mar. 7, 2015) (emphasis in original and emphasis added).

In *Primary Ins. Agency Gr., LLC v. Nofar*, the Michigan Court of Appeals affirmed the trial court's grant of summary disposition in favor of defendants with respect to the plaintiff's unfair competition claim when it was "entirely unclear what particular conduct plaintiff claim[ed] constitute[d] the basis for its unfair competition claim ... [and] [a]s a result, there [was] no evidence to support [the claim.]" *See id.* at *6. Here, plaintiff's failure to indicate "what particular conduct" constitutes the basis for its unfair competition claim is even more problematic in the context of a Rule 12(b)(6) motion, because Defendants have not been given fair notice allowing them to adequately answer and defend the unfair competition claim. *See id.* As such, Plaintiff's claim for unfair competition should be dismissed.

### ii. Plaintiff's unfair competition claim should be dismissed because the Complaint fails to allege facts showing unlawful behavior.

"A claim survives [a Rule 12(b)(6)] motion if its '[f]actual allegations [are] enough to raise a right to relief *above the speculative level* on the assumption that all of the complaint's allegations are true.' " *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (emphasis added) (quoting *Twombly*, 550 U.S. at 555). So

"[w]hen a plaintiff pleads facts in support of a claim that could just as easily lend credence to a completely innocuous scenario, *Iqbal* and *Twombly* instruct that the claim ought to be dismissed." *Maiberger*, 724 F. Supp. 2d at 782.

In *Twombly*, the Supreme Court held the plaintiffs' complaint deficient under Rule 8. 550 U.S. at 569.  The *Twombly* Complaint was deficient because plaintiffs' factual allegations did not "suggest" unlawful activity because they were "not only compatible with," but indeed "more likely explained by" lawful behavior. *Id.*  Here, plaintiffs' allegations are "more likely explained" by lawful behavior.  *See id.*

Plaintiff's Exhibits F, G, I, and J "lend credence to a completely innocuous scenario." *See Maiberger*, 724 F. Supp. 2d at 782.  Plaintiff's Exhibit F, a letter provided by Mr. Herron to Ford Motor Company ("Ford"), explains Opus did not agree with AirPro's contention in its Interrogatory responses to Ford that "the AutoEnginuity Giotto product falls within [the definition of 'OEM Software']." (ECF No. 1-6, PageID.40-41). In *Ford Motor Co. v. AirPro Diagnostics LLC*, No. 20-CV-10518, this Court granted Ford's motion for partial summary judgment as to liability on Ford's trademark dilution and trademark infringement claims against AirPro, among others. *See* Ex. C.  The Court found that AirPro had unlawfully used Ford Marks in representing AirPro's scan tool as OEM software, when it in fact uses AutoEnginuity's Giotto software—an aftermarket software. *See id.* at 10, 29.  This Court concluded: "It cannot be disputed that … AirPro set out to identify Ford as

19

one source of OEM software used on its scan tool, not just to claim that its scan tool is compatible with Ford's Diagnostic Software." *Id.* at 29.  AirPro's trademark infringement of Ford's Marks necessarily entailed a misrepresentation of AutoEnginuity's Giotto Software.

Exhibit F to Plaintiff's Complaint reflects Opus's concern that AirPro was misrepresenting the Giotto Product, and this Court has already confirmed in *Ford Motor Co. v. AirPro Diagnostics, LLC* that this concern was warranted. (ECF No. 1-6, PageID.40-41).  That it was this concern that led to AutoEnginuity's implementation of the new EULA and Opus's ultimate termination of AirPro's license to the Giotto Product is certainly a likely explanation of Defendants' alleged actions.  That the new EULA and the license termination were motivated by AirPro's unlawful representation of the Giotto Product is further evidenced by Plaintiff's Exhibits G, I, and J. Plaintiff's Exhibit G, the August 25, 2021 letter sent by Defendant Brian Herron ("Mr. Herron") to AirPro shows proper motives:

> [Opus] remain[s] concerned that the lawsuit filed by Ford Motor Company against AirPro indicates that AirPro claims to perform OE Scans using the AutoEnginuity Giotto products and software, and that AirPro's actions may be subjecting Opus IVS to potential liability. … [Opus] believes that AirPro's statements are falsely representing AutoEnginuity products and services.

(ECF No. 1-7, PageID.43).  Plaintiff's Exhibit I, the October 4, 2021 letter from Mr. Herron to AirPro, shows proper motives:

> [AirPro's] response to the motion for summary judgment [in *Ford Motor Co.*
> *v. AirPro Diagnostics, LLC*] amplifies that AirPro's position with respect to
> OEM is entirely inconsistent with ours. We find this troublesome for many
> reasons, and we cannot support any use of our product where it is represented
> as OEM or OEM equivalent, especially in the determination of vehicle
> safety.

(ECF No. 1-9, PageID.48).  Plaintiff's Exhibit J, the October 21, 2021 letter from

Mr. Herron to AirPro shows proper motives:

> Finally, [Opus has] reminded [AirPro] that AirPro's misleading statements
> and continued use of the AutoEnginuity Giotto products potentially subjects
> Opus IVS to claims from third parties.

(ECF No. 1-10, PageID.50-51).  Because Plaintiff's own exhibits undermine

Plaintiff's unfair competition claim, Plaintiff has impermissibly tried to "*create*

*speculation or suspicion* of a legally cognizable cause of action."  *See League of*

*United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis

added).  Such speculation is evident by the Complaint's language: "*[L]ikely* seeing

an opportunity to harm what was now a direct competitor, AutoEnginuity

implemented a new End User License Agreement in December 2020." ECF No. 1,

PageID.10, ¶ 52 (emphasis added).

Plaintiff further attempts to create a legally cognizable cause of action by

further speculating: "The foregoing conduct of Defendants constitutes a thinly veiled

attempt to harm their competitor by preventing [AirPro's] use of the Giotto product

and otherwise inflicting financial harm on AirPro." *Id.* at PageID.14, ¶ 71.  But not

only do **all** the relevant exhibits to the Complaint contradict this conclusion, the

recent Opinion and Order by this Court granting Ford's Motion for Partial Summary

Judgment as to liability against AirPro for its misrepresentations of Defendants'

Giotto Product further undermine Plaintiff's legal conclusion that Defendants

engaged in unfair competition.  *See generally* Ex. C; ECF No. 1.

Given that the only "factual allegations" in Plaintiff's Complaint that could

even potentially support its unfair competition claim are conclusory and mere

speculation, Rule 12(b)(6) mandates dismissal because Plaintiff has failed to allege

facts that "raise a *reasonable* expectation that discovery will reveal evidence of

illegal [conduct]."  *Twombly*, 550 U.S. at 556 (emphasis added).

> "[*Twombly* and *Iqbal*] require a plaintiff to show in his or her complaint that
> a given claim is more than just a "possibility." A plaintiff cannot provide
> "facts that are 'merely consistent with' a defendant's liability" and expect to
> survive a motion to dismiss. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550
> U.S. at 555). Rather, the facts must "allow the court to draw the *reasonable*
> inference that the defendant *is liable for the misconduct alleged*." *Id.*
>
> *Maiberger*, 724 F. Supp. 2d at 782 (emphasis added).

Plaintiff's Complaint, **<u>at best</u>**, permits this Court to infer "the mere possibility

of misconduct."  *See id.*  As such, Plaintiff's claim for unfair competition should be

dismissed because Plaintiff has not "show[n]" it is "entitled to relief." *See* FED. R.

CIV. PRO. 8(a)(2).

**C. Plaintiff has failed to state a claim for breach of contract because the Complaint fails to allege facts showing breach.**

"To state a claim for breach of contract in Michigan, a plaintiff must allege: (1) the existence of a valid contract, (2) the terms of the contract, (3) breach of the contract, and (4) an injury caused by the breach." *Mikron Digital Imaging, Inc. v. Omega Medical Imaging, Inc.*, No. 16-13134, 2017 WL 372019, at *3 (E.D. Mich. Jan. 26, 2017) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).  Plaintiff has failed to allege facts that "accepted as true" "plausibly suggest" a breach of contract, see *Iqbal*, 556 U.S. at 680, in alleging:

> (1) "upon information and belief, Drew Technologies … wrongfully exploited [the information obtained under the Mutual Party Agreement] for its own benefit";
>
> (2) "Drew Technologies wrongfully used that information and technical knowledge to enhance its RAP product in an effort to directly compete with AirPro in the field of remote diagnostic services"; and
>
> (3) "Upon information and belief, Drew Technologies breached the Mutual Party Agreement in numerous ways during the three-year period following expiration of the agreement, including by using the information and technical knowledge provided by AirPro under that Agreement to wrongfully establish a competing business."

*See* ECF No. 1, PageID. 8, 9, 15.  This Court's opinion in *Bestop, Inc. v. Tuffy Sec. Products, Inc.* is instructive as to why these allegations are insufficient. *See generally* No. 13-10759, 2014 WL 172299 (E.D. Mich. Jan. 15, 2014).

In *Bestop*, this Court dismissed the defendant's Counterclaim for breach of a confidential information-exchange agreement—an agreement that was strikingly

23

similar to the confidential information-exchange agreement at issue in this lawsuit: the Mutual Party Agreement between Drew and AirPro. *See id.* at *2, *8. The parties in *Bestop* entered into a confidential information-exchange agreement pursuant to which Defendant-Counterclaimant Tuffy agreed "to furnish confidential information to Bestop ' solely for the purposes of ' purchasing Tuffy." *Id.* at *2.  That agreement emphasized "Bestop agreed 'to review examine, inspect or obtain such information only for the purposes described' " and "to use [such information] only for the contemplated purpose" of purchasing Tuffy. *Id.*

This Court explained, in dismissing the breach of contract claim, that "Tuffy offer[ed] only the most basic conclusory allegations of a breach of contract claim." *Id.* at *7.  Not only was the nature of the confidential information-exchange agreement in *Bestop* strikingly similar to the nature of the Mutual Party Agreement at issue here, but so were the allegations of breach.

> [T]he Court finds that Tuffy has not stated a plausible claim of relief for breach of the confidentiality agreement. Tuffy has only made conclusory allegations that Bestop breached the confidentiality agreement. Tuffy states that Bestop took confidential information, which Tuffy alleges breaches the agreement, and put that information to use in creating the allegedly infringing patent and product. But Tuffy fails to put forth any factual support for its allegations … ***Tuffy cannot simply say that Bestop breached the contract by taking information and creating an infringing product.***

*Id.* at *8 (emphasis added).  That Drew breached the Mutual Party Agreement at issue here by "taking information and creating an infringing" product is the essence of what Plaintiff has alleged. *See id.*  Specifically, Plaintiff has alleged:

24

(1) "AirPro disclosed to Drew Technologies significant detail regarding all components of AirPro's operation";

(2) "AirPro disclosed … details regarding how its use of the AutoEnginuity Giotto product in conjunction with the Cardaq interface allowed AirPro to successfully provide remote diagnostic services to collision repair shops for a wide range of vehicles"; and

(3) "At th[e] time, this proprietary combination of hardware and software was not generally known in the industry, and Drew Technologies did not have any ability to service collision repair shops or successfully provide remote diagnostic services."

ECF No. 1, PageID.8-9, ¶¶ 40-42.  In effect, these allegations do nothing more than allege that Drew took information and created a competing product.  More importantly, these allegations do not "permit the court to infer more than the *mere possibility of misconduct*, [and thus] the complaint has [conclusorily] alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (emphasis added) (quoting FED. R. CIV. PRO. 8(a)(2)).  Plaintiff's breach of contract claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint with prejudice for its failure to state a claim upon which relief can be granted.

Respectfully submitted,

Date: January 13, 2023                       BY:   /s/William J. Stapleton
                                             William J. Stapleton (P38339)
                                             Attorney for Defendant

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

I declare that the above statements are true to the best of my knowledge, information and belief.

<div style="margin-left: 40%;">

BY:  /s/William J. Stapleton
William J. Stapleton (P38339)
Rachel N. Hanson (P82828)
HOOPER HATHAWAY, P.C.
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426
wstapleton@hooperhathaway.com
Attorney for Defendant

</div>

26