UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AIRPRO DIAGNOSTICS, LLC, a Florida limited liability company, | Case No. 22-12969-LVP-EAS |
| Plaintiff, | Honorable Linda V. Parker |
| v. | Magistrate Judge: Elizabeth A. Stafford |
| DREW TECHNOLOGIES, INC., a Michigan corporation, OPUS IVS, INC., a Delaware corporation, AUTOENGINUITY, LLC, an Arizona limited liability corporation, and BRIAN HERRON, an individual, | |
| Defendants. and | |
| OPUS IVS, INC. | |
| Defendant/Counter-Plaintiff, | |
| v. | |
| AIRPRO DIAGNOSTICS, LLC, a Florida limited liability company, | |
| Plaintiff/Counter-Defendant. | |

| | |
|---|---|
| Adam J. Brody (P62035) | William J. Stapleton (P37339) |
| Ziyad I. Hermiz (P72236) | Rachel N. Hanson (P82828) |
| VARNUM LLP | HOOPER HATHAWAY, PC |
| Attorneys for Plaintiff/Counter-Defendant | Attorneys for Defendants/Counter-Plaintiff |
| Bridgewater Place | 126 S. Main Street |
| 333 Bridge Street NW, 17th Floor | Ann Arbor, MI 48104 |
| P.O. Box 352 | (734) 662-4426 |
| Grand Rapids, MI 49501-0352 | wstapleton@hooperhathaway.com |
| (616) 336-6000 | rhanson@hooperhathaway.com |

| | |
|---|---|
| ajbrody@varnumlaw.com<br>zihermiz@varnumlaw.com | Samuel A. Slater (#43212)<br>T. Nelson Hughes, Jr. (#59342)<br>WYRICK ROBBINS LLP<br>Attorneys for Defendants/Counter-Plaintiff<br>4101 Lake Boone Trail, Suite 300<br>Raleigh, NC 27607<br>(919) 781-4000<br>sslater@wyrick.com<br>nhughes@wyrick.com |

### **PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL**

## I. INTRODUCTION

AirPro is mindful of the Court's recent statement that it need not submit a reply brief in support of its motion to compel, and it remains committed to working with Defendants to try to resolve the parties' issues without the necessity of a hearing. However, if the parties cannot reach an agreement and the hearing proceeds, AirPro believes the Court should have the benefit of the full picture of what has taken place, because Defendants' response misstates, and at times entirely omits, key facts and issues. AirPro therefore submits the following reply.

## II. ARGUMENT

### A. THE COURT CAN PROPERLY CONSIDER AIRPRO'S MOTION.

Defendants argue at length that the Court should not consider AirPro's motion, because it was filed after the close of discovery. However, as the Court is undoubtedly aware, that is not an automatic rule. Rather, "[w]hether to grant a motion to compel discovery lies within the district court's discretion[,]" and while Rule 16's good cause standard is employed, this Court has also recognized that "Fed. R. Civ. P. 37, which deals with discovery, provides no deadline for filing of a motion to compel." *Sensat v. Southwest Airlines Co.*, No. 17-cv-12468, 2018 W.L. 11312204, *2 (E.D. Mich. Oct. 11, 2018) (citations omitted).[1]

---

[1] Copies of the unpublished opinions cited herein are attached as **Exhibit A**.

As detailed in AirPro's primary brief and below, the circumstances surrounding AirPro's pursuit of the information at issue over the past several months are such that the Court should exercise its discretion to consider AirPro's motion on the merits and require Defendants to produce the limited amount of information now sought by AirPro. *See id.* (granting in part motion to compel filed after close of discovery); *see also Frye v. CSX Transportation, Inc.*, No. 14-CV-11996, 2016 W.L. 2758268, *2 (E.D. Mich. May 12, 2016) (granting in part motion to compel filed after close of discovery, given efforts by moving party leading up to filing of motion); *Lange v. Crosbie*, No. 22-11495, 2023 W.L. 4916338, *3 (E.D. Mich. Aug. 1, 2023)(granting motion to compel filed after close of discovery based on Court's interest in "resolving matters on their merits").

### B. DEFENDANTS IGNORE THEIR OWN CLAIM FOR DAMAGES.

Perhaps the most glaring misstatement in Defendants' response is this: "Plaintiff did not request any of Defendants' financial records . . . in Plaintiff's First Requests." ECF No. 47, PageID.1159. To make this claim, Defendants ignore the fact that (1) they asserted claims for "lost net profits" and "loss of sales" in their counterclaim; and (2) AirPro's First Requests included a demand for "any and all documents relating in any way to any damages that you are claiming in this matter." ECF No. 44-1, PageID.1010. Simply put, AirPro did request Defendants'

financial records (which of course would form the core of any claim for lost net profits and lost sales) at the outset of discovery.

Moreover, AirPro has been attempting ever since to get Defendants to produce the underlying support for their claim to these damages, through additional requests for specific financial information like profit and loss statements, sales reports, and tax returns, as well as corporate representative deposition topics aimed directly at Defendants' claimed damages. *See* ECF No. 44-3, PageID.1083-84; ECF No. 44-5, PageID.1108-10. Despite these numerous, timely requests, Defendants have refused to produce the requested information.[2]

### C. AIRPRO TIMELY REQUESTED PRODUCTION OF DEFENDANTS' CUSTOMER INFORMATION.

Another of Defendants' misstatements is their claim that AirPro supposedly never timely sought production of a list of Defendants' customers. *See* ECF No. 47, PageID.1159, 1166 ("Plaintiff did not request any of Defendants' customer lists in Plaintiff's Second Requests[;] . . . Plaintiff had not and did not request any of Defendants' customer lists until after . . . . November 1, 2024[.]"). This is false.

Specifically, and directly contrary to Defendants' representations, AirPro's

---

[2] AirPro's Third Requests, served <u>before</u> the close of discovery, also narrowed the information requested to try to address Defendants' objections. *See* ECF No. 44-6, PageID.1119-20. Rather than responding substantively, Defendants waited the full 30 days without saying a word, then objected on timeliness grounds, continuing their refusal to produce anything. *See* ECF No. 44-9, PageID.1132-33.

Second Requests contained a demand for the production of all of Defendants' "customer contracts[.]" ECF No. 44-3, PageID.1084. Obviously, the production of all customer contracts would necessarily entail a disclosure of all of Defendants' customers. This information was therefore requested in a timely manner.[3]

### D.   AIRPRO ASSERTED ITS DISGORGEMENT THEORY LONG AGO.

Defendants also assert that AirPro "only claimed – for the first time – four days before the close of the eleven-month discovery period, that Plaintiff was asserting a 'disgorgement' theory of damages against Defendants." ECF No. 47, PageID.1176. Defendants are wrong. On October 20, 2023, AirPro set forth its disgorgement theory in response to Defendants' counterclaim, putting them on notice that AirPro would seek such damages: "[T]he only entity that engaged in unfair competition is Counter-Plaintiff, which . . . has resulted in millions of dollars in profit for Counter-Plaintiff that is rightfully subject to disgorgement in favor of [AirPro] on its affirmative claims." ECF No. 22, PageID.486.

### E.   AIRPRO HAS CONSISTENTLY SOUGHT THE INFORMATION AT ISSUE.

Another claim made by Defendants is that AirPro did not raise the issue of the non-production of Defendants' financial information until long after the close

---

[3] Again, in an effort to facilitate discovery, AirPro later narrowed the scope of its request related to Defendants' customers, from the actual contracts with each customer to just a list of those customers' identities. *See* ECF No. 44-6, PageID.1120. Once again, Defendants waited the full 30 days, then lodged a timeliness objection and refused to answer. *See* ECF No. 44-9, PageID.1132-33.

4

of discovery. Not so. In addition to the numerous additional document requests discussed above that were aimed at addressing Defendants' objections, counsel for AirPro also raised the issue of Defendants' failure to produce documents supporting their claimed damages during the conferral call referenced in Defendants' response, which took place in early October. Then, immediately thereafter, the parties undertook depositions, at which counsel for AirPro repeatedly questioned Defendants' witnesses about this very topic. For example, the following exchange occurred during Mr. Herron's October 24 deposition:

> Q   And you say you have compiled or are compiling a list of the specific customers that were unlawfully and wrongfully diverted from Opus to AirPro?
> A   Yes.
> MR. BRODY: Sam, when are we going to get that?
> MR. SLATER: I don't know. I'll look into it. I mean certainly before --
> MR. BRODY: It should have been prepared long ago. We asked for -- <u>we asked in discovery about damages months and months ago, and now we're sitting here in the depositions with a week left in discovery, we find well, we're working on it. That's pretty troubling</u>.

ECF No. 44-8, PageID.1130 (emphasis added).

The following week, during Mr. Herron's corporate representative deposition, counsel for AirPro again raised the issue of Defendants' production of financial records. *See* ECF No. 44-7, PageID.1126 (responding to counsel for Defendants' representation that the financial records "exist" in the context of discussions about damages, and indicating that "I have no doubt, Sam, that you

5

guys have or will be producing all that information"). Unfortunately, Defendants thereafter refused to produce that information, thereby necessitating this motion. But for Defendants to now argue that AirPro has ignored the issue of Defendants' failures is disingenuous, at best.

### F. DEFENDANTS' CLAIM OF UNDUE BURDEN RINGS HOLLOW.

Defendants spend several pages of their response arguing that it would be unduly burdensome for them to provide the requested information. *See* ECF No. 47, PageID.1174-80. But Mr. Herron's deposition testimony tells a different story, as he admitted that <u>Defendants have already compiled the requested information</u>.

With respect to the financial information, Mr. Herron testified that Defendants had already calculated the "average profitability per customer" and (he erroneously believed) produced the underlying financial records, after which counsel for Defendants indicated that "there are numbers affiliated with that [calculation] that they had shared with us. . . . [T]hose numbers have been produced separate and apart from the customer list." ECF No. 44-7, PageID.1126. And with respect to customer lists, Mr. Herron and Defendants' counsel further conceded that a list of Defendants' customers had already been compiled for purposes of analyzing their own damage claim. *See id.* at PageID.1124. Obviously, it is not unduly burdensome to ask a party to produce documents that it has already compiled and analyzed.

6

In addition, the narrow scope of the information at issue undercuts Defendants' undue burden argument. That is, <u>all that AirPro is seeking now are Defendants' profit and loss statements, sales reports, tax returns, and customer lists (as distinct from customer contracts), from 2016 to the present</u>. Even if Defendants hadn't already compiled that information, it would not be unduly burdensome for them to compile and produce that limited information now.

### G. DEFENDANTS IGNORE THEIR FAILURE TO PRESENT A PROPERLY PREPARED CORPORATE REPRESENTATIVE.

Finally, noticeably absent from Defendants' response is any discussion about the alternate grounds on which production could be ordered - as a sanction for Defendants' failure to present a properly prepared corporate representative. AirPro timely served a corporate representative deposition notice addressing all of the topics now at issue. Rather than prepare and present a witness to testify on these topics, Defendants simply chose not to do so, without explanation or excuse. Given this conduct, it would be entirely appropriate for the Court to enter an order under Rule 37 requiring the production of the requested information.

### III. CONCLUSION

Based on the foregoing, AirPro requests that the Court grant its motion.

Respectfully submitted,

Dated: January 31, 2025    By: /s/   *Adam J. Brody*
                               Adam J. Brody (P62035)

## **CERTIFICATE OF SERVICE**

I certify that on the date below, I electronically filed **Plaintiff's Reply to Defendants' Response in Opposition to Motion to Compel** and this **Certificate of Service**, with the Clerk of the District Court using its CM/ECF System, which will then electronically notify ECF participants registered to receive notice via the CM/ECF electronic filing system.

Dated: January 31, 2025            */s/   Adam J. Brody*_____
                                               Adam J. Brody (P62035)
                                               Ziyad I. Hermiz (P72236)
                                               Francesca L. Parnham (P87300)
                                               VARNUM LLP
                                               Bridgewater Place
                                               333 Bridge St. NW, Suite 1700
                                               P.O. Box 352
                                               Grand Rapids, MI 49501-0352
                                               Tel: (616) 336-6000
                                               ajbrody@varnumlaw.com
                                               zihermiz@varnumlaw.com
                                               flparnham@varnumlaw.com

8