UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AIRPRO DIAGNOSTICS, LLC, a Florida limited liability company, | Case No. 22-12969-LVP-EAS |
| Plaintiff, | Honorable Linda V. Parker |
| v. | Magistrate Judge: Elizabeth A. Stafford |
| DREW TECHNOLOGIES, INC., a Michigan corporation, OPUS IVS, INC., a Delaware corporation, AUTOENGINUITY, LLC, an Arizona limited liability company, and BRIAN HERRON, an individual, | |
| Defendants. | |

| | |
|---|---|
| Adam J. Brody (P62035)<br>Ziyad I. Hermiz (P72236)<br>Francesca L. Parnham (P87300)<br>VARNUM LLP<br>Bridgewater Place<br>333 Bridge Street NW, 17th Floor<br>P.O. Box 352<br>Grand Rapids, MI 49501-0352<br>(616) 336-6000<br>ajbrody@varnumlaw.com<br>zihermiz@varnumlaw.com<br>flparnham@varnumlaw.com<br>*Attorneys for Plaintiff* | William J. Stapleton (P38339)<br>HOOPER HATHAWAY, PC<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>wstapleton@hooperhathaway.com<br><br>Samuel A. Slater (NC # 43212)<br>T. Nelson Hughes, Jr. (NC # 59342)<br>WYRICK ROBBINS YATES & PONTON LLP<br>4101 Lake Boone Trail, Suite 300<br>Raleigh, NC 27607<br>(919) 781-4000<br>sslater@wyrick.com<br>NHughes@wyrick.com<br>*Attorneys for Defendants* |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I. **AirPro's designation of only one document as "confidential," which it does not contend was wrongfully used by Drew, is fatal to its breach of contract claim.**

AirPro's acknowledged failure to make confidentiality designations for <u>any</u> of the information it contends was wrongfully used by Drew means that none of that information was protected by the Mutual Party Agreement ("MPA"). Section 10 of the MPA required that AirPro "mark any documentary or tangible Information considered confidential or proprietary as 'Confidential' or 'Proprietary' at the time of disclosure." *See* ECF No. 1-2, PageID.24, MPA § 10. AirPro admits it did this for only one document. *See* ECF No. 62, PageID.2498-99. For Information verbally disclosed, AirPro was required to "reduce such Information to writing within forty-five (45) days of the date of disclosure." *See* ECF No. 1-2, PageID.24, MPA § 10. AirPro admits it did not reduce any such Information to writing after verbal disclosure. *See* ECF No. 62, PageID.2499 (failing to address Defendants' Statement of Fact ("SOF") ¶ 17).[1]

This Court's summary judgment decision in *Rainbow Nails Enterprises, Inc. v. Maybelline, Inc.* is dispositive. *See* 93 F. Supp. 2d 808 (E.D. Mich. 2000). In *Maybelline*, the plaintiff alleged breach of a confidentiality agreement that "set[] forth Maybelline's obligations to preserve the confidentiality of 'Information'

---

[1] AirPro also fails to address SOF ¶¶ 2-6, 8-9, 11-12, 15, 17-20, 22-29, 32-35, 38, 43-49, 50 (SOF ¶ 52 is erroneously identified as SOF ¶ 50 in AirPro's Response), 51, 53-56, 60, 63-67, 69-72, and 74, which must now be deemed admitted.

2

provided by Plaintiff, and not to use this 'Information' except for the purpose of evaluating Plaintiff's technology." 93 F. Supp. 2d at 825.  Like the MPA, that confidentiality agreement contained a condition precedent to protection of "Information," which required that plaintiff make written designations of confidentiality. *Id.*  Like AirPro, the plaintiff in Maybelline did not dispute that it failed to adhere to these requirements. *Id.*  Also, like AirPro, the plaintiff instead argued that "such 'technical' violations do not waive its right to insist that Maybelline preserve the confidentiality of its technology." *Id.*; *see* ECF No. 62, PageID.2513.  Rejecting plaintiff's argument and granting summary judgment in favor of Maybelline, this Court explained it was "aware of no law that would relieve a party of its obligations under a signed agreement, regardless of how 'technical' these obligations might be." 93 F. Supp. 2d at 825-26.  This Court accordingly held: "Because Plaintiff did not meet these preconditions for confidentiality under the Agreement, the information supplied by Plaintiff was not protected under the Agreement, and Maybelline could not have breached the Agreement by disclosing or using the information in question." *Id.* at 826.  So too here.

AirPro does not contend that Drew wrongfully used any confidential "Information" from the lone document AirPro designated as confidential. *See* ECF No. 62, PageID.2512-16.  Because AirPro failed to satisfy "the[] preconditions for confidentiality" for the information it does contend Drew wrongfully used, Drew

"could not have breached the [MPA] by disclosing or using the information in question." *See* 93 F. Supp. 2d at 826.

Recognizing this fatal flaw, AirPro argues "the parties' course of conduct" shows they "mutually abandoned" the requirements of Section 10 through an implicit contract modification. *See* ECF No. 62, PageID.2513-14. To the contrary, Drew made written confidentiality designations pursuant to Section 10, just like AirPro did for the lone document it considered confidential. *See* Exhibit A; ECF No. 53-16, PageID.1795. Further, the MPA required that any modification of its terms be explicit and in writing. *See* ECF No. 1-2, PageID.25 ("This Agreement shall not be changed except by written amendment executed by the parties."). Far from showing abandonment of Section 10, the parties' course of conduct only confirms that compliance with Section 10's "preconditions for confidentiality" was required. *See* 93 F. Supp. 2d at 826. Summary judgment is thus proper for AirPro's undisputed failure to do so.

**II. Opus acted for justified business reasons and, regardless, these acts changed nothing for AirPro. AirPro's tortious interference claim should be dismissed.**

Not only is it undisputed that Opus' actions were motivated by legitimate business reasons, but AirPro had no right to the software updates that it claims were interfered with.

**A. It is undisputed that Opus both implemented and terminated the New EULA for legitimate business reasons.**

4

AirPro admits that "[t]he 'key driver' behind [Opus] updating the EULA was Opus' recent acquisition of AutoEnginuity in 2020 and a recognition that the EULA lacked a number of industry standard terms and conditions." *See* ECF No. 62, PageID.2505-06 (failing to address Defendants' SOF ¶ 51). There is also no genuine dispute that Opus also updated the EULA to protect Opus from being sued by Ford and to mitigate the general liability risk that AirPro's misrepresentations of the Giotto Software as OEM software posed for Opus. *See id.* Indeed, AirPro openly acknowledged that Opus' concerns were legitimate:

> 6   Q   Do you believe that Brian's expressed concerns
> 7   about AirPro's representations of its offerings as OEM
> 8   software or using OEM software were 100 percent OEM --
> 9   A   I --
> 10  Q   -- do you believe that those expressed
> 11  concerns were fake, that they were not genuinely held?
> 12  A   No. I don't believe that those were fake, and
> 13  I do understand his concerns. And we had had some

ECF No. 53-5, PageID.1746, Olsen Dep. 209:6-13.

> 1   Q   Did Jay agree to the product being -- to the
> 2   AE product being described in any other manner other
> 3   than OEM-sourced?
> 4   A   Jay did not want us to describe it as OEM
> 5   software. Those were a derivative of OEM software.
> 6   That would be an indication -- and I can understand the
> 7   concern, if it's described as OEM software, that could
> 8   give an auto manufacturer the impression that they are
> 9   copying the software incorporated in their own tool
> 10  improperly.

ECF No. 53-5, PageID.1748, Olsen Dep. 231:1-10.  With admittedly legitimate business reasons[2] for Opus' allegedly wrongful actions, AirPro's tortious interference claim cannot survive because the evidence of motive is "so one-sided that no reasonable person could decide the contrary."[3]

### B. AirPro had no right to what it claims was interfered with.

AirPro's tortious interference claim is that Opus interfered with AirPro's continued access to the Giotto Software by implementing the New EULA and ultimately terminating AirPro's license to the Giotto Software. *See* ECF No. 62, PageID.2523-24.  But, importantly, AirPro had no right to new, updated versions of the Giotto Software. *See generally* ECF No. 1-1, PageID.20-21; ECF No. 1-4, PageID.31-36.  In fact, AirPro's current President Josh McFarlin was aware of this in mid-2021 and was concerned about it. *See* ECF No. 53-28, PageID.1879.  AirPro admits that after the license termination, AirPro simply "continued to use the Giotto

---

[2] *Urb. Assocs., Inc. v. Standex Elecs., Inc.*, 216 F. App'x 495, 514 (6th Cir. 2007) ("The weight of Michigan authority holds that when the defendant's actions are motivated by legitimate business reasons, its actions do not constitute improper motive or interference."); *see also ABO Staffing Servs., Inc. v. UnitedHealthcare Ins. Co.*, No. CV 22-11696, 2023 WL 3865510, at *4 (E.D. Mich. June 7, 2023), *reconsideration denied*, No. 22-CV-11696, 2024 WL 1256283 (E.D. Mich. Mar. 25, 2024) ("Michigan courts are clear that a defendant cannot be liable for a tortious interference claim where they have legitimate business reasons for the alleged conduct.")

[3] *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 819 (6th Cir.1999); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) ("Cases involving state of mind issues are not necessarily inappropriate for summary judgment.").

Software for years" such that "[t]he only effect of the license termination was that Opus stopped selling AirPro annual updates to the Giotto Software, which Opus never had an obligation to sell." *See* ECF No. 62, PageID.2510 (failing to address Defendants' SOF ¶¶ 69-70). Thus, Opus could have simply stopped selling AirPro software updates without implementing the New EULA or terminating AirPro's license such that there is no actionable interference or harm to support AirPro's claim.[4] The implementation and termination of the New EULA was legally harmless, and summary judgment should be granted.

### III. With no *evidence* of any wrongdoing by Opus, AirPro's *allegations* cannot support its unfair competition claim (nor its other claims).

At the summary judgment stage, AirPro is still relying on its *allegations* in support of its unfair competition claim. *See* ECF No. 62, PageID.2525-26. In its Response, AirPro states: "Defendants ignore the facts *alleged* by AirPro related to the secret amendment of the EULA in December 2020, which was done in an effort to target AirPro's business and eliminate AirPro as a competitor[.]" *Id.* (emphasis added). AirPro provides no evidentiary support for this allegation, nor for its allegation that Opus' termination of the New EULA was "wrongful." *See id.*

---

[4] *See Dalley v. Dykema Gossett*, 287 Mich. App. 296, 323, 788 N.W.2d 679, 696 (2010) (explaining essential elements of a claim for tortious interference with business expectancy include an "intentional" and "improper" "interference by the defendant *inducing or causing* a breach or termination of the relationship or expectancy" and "*resultant* damage to the plaintiff") (emphasis added).

7

Similarly, AirPro provides zero evidentiary support for its conclusion that "the evidence establishes Defendants' wrongful use of AirPro's information shared under the MPA." *See* ECF No. 62, PageID.2526. Indeed, the *only* "evidence" cited in AirPro's Response in support of breach are conclusory allegations in self-serving affidavits submitted by AirPro representatives. *See* ECF No. 62-4, PageID.2569-70, Margol Decl. ¶ 9 ("Opus . . . integrated AirPro's disclosed proprietary information into its own operation."); ECF No. 62-5, PageID.2576, Olsen Decl. ¶¶ 13, 15 ("Drew began developing its product leveraging the confidential information disclosed by AirPro."); ("Defendants used AirPro's confidential information[.]"). These conclusory allegations and self-serving affidavits do not create a triable issue of fact.[5] The time for allegations is past, and AirPro's claims must fail due to their utter lack of evidentiary support. Defendants respectfully requests that this Court grant their Motion for Summary Judgment. Respectfully submitted,

---

[5] *See Mav of Michigan, Inc. v. Am. Country Ins. Co.*, 289 F. Supp.2d 873, 875 n.3 (E.D. Mich. 2003) ("Conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact and are insufficient to withstand a motion for summary judgment."); *see also Gallmore v. York*, No. 15-13283, 2018 WL 3245209, at *3 (E.D. Mich. Feb. 14, 2018), *report and recommendation adopted*, No. 2:15-CV-13283, 2018 WL 1737120 (E.D. Mich. Apr. 11, 2018) ("[T]he standard for determining whether summary judgment is appropriate is 'whether *the evidence* presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' ") (emphasis added) (quoting *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005)).

| | |
|---|---|
| Date: March 25, 2025 | BY:  /s/ Samuel A. Slater<br>WYRICK ROBBINS YATES & PONTON LLP<br>Samuel A. Slater (NC Bar No. 43212)<br>T. Nelson Hughes, Jr.  (NC # 59342)<br>4101 Lake Boone Trail, Suite 300<br>Raleigh, NC 27607<br>(919) 781-4000<br>sslater@wyrick.com<br>NHughes@wyrick.com<br><br>BY:  /s/ William J. Stapleton<br>William J. Stapleton (P38339)<br>HOOPER HATHAWAY, P.C.<br>126 South Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>wstapleton@hooperhathaway.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

 I hereby certify that on March 25, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record:

Adam J. Brody
Ziyad I. Hermiz
Francesca L. Parnham
VARNUM LLP
Bridgewater Place
333 Bridge St. NW, Suite 1700
P.O. box 352
Grand Rapids, MI 49501-0352

 I declare that the above statements are true to the best of my knowledge, information and belief.

BY: /s/ William J. Stapleton
William J. Stapleton (P38339)
HOOPER HATHAWAY, PC
126 S. Main Street
Ann Arbor, MI 48104
(734) 662-4426
wstapleton@hooperhathaway.com
*Attorney for Defendants*
