UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **AIRPRO DIAGNOSTICS, LLC**, a Florida limited liability company, | Case No. 22-12969-LVP-EAS |
| Plaintiff, | Honorable Linda V. Parker |
| v. | Magistrate Judge: Elizabeth A. Stafford |
| **DREW TECHNOLOGIES, INC**., a Michigan corporation, **OPUS IVS, INC**., a Delaware corporation, **AUTOENGINUITY, LLC**, an Arizona limited liability corporation, and **BRIAN HERRON**, an individual, | |
| Defendants. | |
| and | |
| OPUS IVS, INC. | |
| Defendant/Counter-Plaintiff, | |
| v. | |
| AIRPRO DIAGNOSTICS, LLC | |
| Plaintiff/Counter-Defendant. | |

## PLAINTIFF'S REPLY IN RESPONSE TO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. <u>Opus Cannot Recover Disgorgement Damages</u>.

*Continental Vineyards LLC v Vinifera Wine Co. LLC,* 973 F.3d 747 (7th Cir. 2020) sets forth the test for whether disgorgement damages can be obtained in connection with an unfair competition claim. That case and others dealing with the Restatement (Third) of Unfair Competition demonstrate that Opus has no right to disgorgement damages. As a starting point, that court noted:

> According to the Restatement, disgorgement is an appropriate remedy for unfair competition when: the actor engaged in the conduct with the intention of causing confusion or deception; and the award of profits is . . . otherwise appropriate [based] upon a comparative appraisal of all the factors of the case, including the following primary factors: (a) the degree or certainty that the actor benefited from the unlawful conduct[.]

*Continental Vineyards LLC v. Dzierzawski*, No. 12-c-3375, 2019 W.L. 2076248, at *5 (N.D. Ill. May 10, 2019).[1]

Importantly, the relevant "confusion" is confusion between the plaintiff and the defendant's competing goods or services: "[t]he jury found Defendants intended to cause confusion or deception among the [Plaintiff's] and [Defendant's] brands." *Id*. at *6. The Court also noted that the question was whether it should order disgorgement of the defendants' profits "attributable to this confusion." *Id*. The Court found that, where it was impossible that there could have been confusion between certain offerings of the plaintiff and the defendants, it was "inappropriate

---

[1] Copies of the unpublished cases cited herein are attached as **Ex. A**.

1

to order disgorgement of [the defendants'] profits" related to those offerings. *Id*.

That distinction is critical, because Opus does not even allege that AirPro ever made statements intended to cause confusion <u>as between AirPro's offerings and those of Opus</u>. Instead, Opus accuses AirPro of "falsely advertising its aftermarket automotive scanning services as OEM scanning services[.]"  ECF No. 61, PageID.2225.  But Opus offers aftermarket scanning services, not OEM scanning services.  *See* ECF No. 53, PageID.1645.  Thus, any profits realized by AirPro as a result of claiming to offer OEM scanning services could not have harmed Opus, because they could not have been based on any confusion between AirPro's services and those offered by Opus.

Also fatal to Opus's disgorgement claim is the factor relating to whether the Defendants benefitted from the conduct at issue.  On this question, another case dealing with the Restatement is instructive.  In *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16-C-03401, 2023 W.L. 3004625 (N.D. Ill. April 19, 2023), the allegedly unfair competition at issue was, as here, supposedly deceptive advertising.  The Court first found that certain advertising engaged in by the defendant was, in fact, false and misleading.  *See id*. at *2.  Even so, the Court refused to award disgorgement, on two grounds that are important here.

First, the Court found that the plaintiff "did not provide any evidence at trial that the contested statements actually influenced consumer buying decisions or

2

generated profits. . . . The lack of evidence that the wrongful conduct was a 'substantial factor' in producing sales is 'fatal' to an award of disgorgement." *Id*. at *3-4. Similarly, Opus has no evidence that AirPro generated <u>any</u> revenue as a result of the statements about which Opus now complains. In fact, Opus admits it cannot identify a single customer that did business with AirPro because of the alleged statements. *See* Herron Corp. Rep. Dep. Tr. at 20:9-22:7, attached as **Ex. B**. And to the degree Opus tries to rely on its supposed "survey" and/or Facebook posts contained in its opposition brief as evidence, those are inadmissible hearsay that cannot be considered. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment.").

Second, the Court in *Republic Technologies* also held that awarding disgorgement would risk an improper windfall to the plaintiff, because there was no evidence that the sales generated as a result of the allegedly unfair competition would have otherwise gone to the plaintiff, as opposed to someone else:

> The Restatement also acknowledges that <u>a disgorgement award "is less likely to be appropriate" in the case of deceptive marketing because "[a] defendant who falsely describes the qualities of its own product may be unjustly enriched by the deception, but often no specific competitor will have a compelling claim to the defendant's profits</u>. There is a risk of multiple recoveries of the same profits. . . . To award Republic the entirety of HBI's profits, then, would overcompensate Republic and put HBI at risk of multiple recoveries of the same profits.

*Id*. at *5 (emphasis added).

Here, the facts are even stronger, given the nature of the allegedly misleading

3

statements. That is, Opus claims that AirPro deceived the public by claiming to offer "OEM scanning services," yet Opus admits that it does not offer those services. To be sure, AirPro denies that it engaged in any wrongful conduct. But even if it had, <u>the only entities that could have even potentially been harmed by AirPro's alleged conduct would be the OEMs that provide OEM scanning services, not Opus</u>.[2] As such, Opus has no claim, let alone a "compelling claim," to AirPro's profits, and to award Opus <u>any</u> disgorgement damages would represent an improper windfall.

### B. Self-Scans were Not a Breach of the New EULA.

AirPro's "Self-Scan" functionality was not a breach of the New EULA, because the manner in which this functionality was implemented did not constitute "concurrent" use of the Giotto software, nor did it constitute AirPro "sublicensing" or "lending" the software to its customers. AirPro's "Self-Scan" functionality is described as follows:

> [The customer has] the AirPro. The shop technician could open the AirPro, plug it into a vehicle, start the software, and retrieve DTCs. And then … the DTCs would be uploaded to [AirPro] in Orion. [AirPro] would take a look at it [and determine if the customer] need[s] our assistance," or, "No, you don't."

*See* Olsen Dep. Tr. at 228:17-229:1, attached as **Ex. C**. AirPro's customers are not

---

[2] Ironically, Opus's own "evidence" proves this point. Its (hearsay) Facebook post notes, in part, "I refuse to use aftermarket scan tools for scanning or calibrations when repairing collision vehicles!!!" ECF No. 61, PageID.2227. Of course, Opus uses only aftermarket scan tools.

4

required to dial an AirPro technician every time they run a scan. Instead, as Jason Blackston, Opus's Vice President of Global Diagnostics, aptly described, AirPro is "kind of like the secondary mechanic," where an initial scan would be conducted by the customer with AirPro providing subsequent analysis and recommendations. *See* Blackston Dep. Tr. at 16:25-17:8, attached as **Ex. D**. In other words, the customer was the initial user of the tool when a job was undertaken, and that individual may or may not have chosen to then engage an AirPro technician for further assistance.

This functionality is consistent with the idea that the Giotto license was always tied to a particular tool, not any particular user. As Bill VanOrden, AutoEnginuity's Technical Support Manager, confirmed, a license to install the Giotto software and its associated activation code are tied to the device, not the user. *See* VanOrden Dep. Tr. at 65:7-25; 66:8-15, attached as **Ex. E**. Given this set up, Opus cannot plausibly claim that mere use of a tool (for which a license had already been acquired) by one of AirPro's customers should be considered a "sublicense" by that customer or an act of AirPro "lending" the Giotto license to its customer.

Finally, Opus was not damaged in any way by this alleged conduct. Opus has no evidence to establish that, if a customer was precluded from performing Self-Scans because of the New EULA, it would have decided on its own to separately license software from Opus. And the solution could not have been for a second license to have been purchased for the same AirPro tool, because that was not

5

possible: AutoEnginuity could not create a second license for a particular tool in order for AirPro's customers to purchase and use a second license. *See* Ex. C, Olsen Dep. Tr. at 208:1-4. Thus, to the degree that Opus is seeking damages in the form of a license fee for each Self-Scan performed, that claim must be dismissed.[3]

C. **AirPro's Statements were not a Breach of the New EULA.**

Opus also claims that AirPro breached the section of the New EULA that prohibits licensees from "mak[ing] statements that diagnostic services performed using Software are equivalent to the OE diagnostic system[.]" *See* ECF No. 1-4, PageID.31-32. In making this claim, Opus relies rely on (1) AirPro's Certificates of Scans from June to September 2021, which contain the statement: "*\*AirPro* utilizes embedded OEM software with OEM compliant interfaces which meet or exceed OEM requirements\*[;]" and (2) historical screen shots of AirPro's webpage, which contain the statement: "AirPro Diagnostics is the most advanced, remote diagnostics, calibration, and programming services on the market today! Our scan tool uses only licensed OEM information and software directly connected to the vehicle[.]" *See* ECF No. 53-19, PageID.1800; ECF No. 61-5, PageID.2250-2254.

Simply put, the foregoing statements are not a breach of the New EULA,

---

[3] Opus claims that it is entitled to at least nominal damages if it is able to establish a breach of the New EULA. Even if Opus could prove a breach and the Court were inclined to agree that nominal damages could be recovered as a result, summary judgment should still be entered in AirPro's favor for any damages <u>other than</u> nominal damages with respect to Opus's breach of contract claim.

6

because they do not contain a prohibited statement.  Nowhere in either statement does AirPro assert that services provided using the Giotto software are equivalent to OEM diagnostic systems, which is all that the New EULA prohibits.  As such, these statements cannot form the basis of a breach of contract claim.

Moreover, even if AirPro had breached this provision, Opus has no evidence that it was damaged as a result.  Opus admits that it has no evidence of any customer leaving Opus because of any alleged statements by AirPro.  *See* Ex. B, Herron Corp. Rep. Dep. Tr. at 20:9-22:7.  And, in particular with respect to the Certificates of Scans, it would have been impossible for Opus to have been damaged by those statements, given the timing.  That is, Opus correctly states that the "Certificates of Scan were provided to AirPro's customers after every scan performed by AirPro." *See* ECF No. 61, PageID.2221 (emphasis added).  This timing makes it impossible for the statement to have caused a loss to Opus, because it was published post-service and therefore necessarily could not have influenced the customers' choice between AirPro and Opus.

                                  Respectfully submitted,

Dated: March 25, 2025              By:  */s/ Adam J. Brody*
                                                  Adam J. Brody (P62035)
                                                  VARNUM LLP
                                                  Bridgewater Place
                                                  333 Bridge St. NW, Suite 1700
                                                  P.O. Box 352
                                                  Grand Rapids, MI 49501-0352
                                                  ajbrody@varnumlaw.com

## **CERTIFICATE OF SERVICE**

      I certify that on the date below, I electronically filed the foregoing paper with the Clerk of the District Court using its CM/ECF System, which will then electronically notify ECF participants registered to receive notice via the CM/ECF electronic filing system.

Dated:  March 25, 2025        By:  */s/ Adam J. Brody*
                                                  Adam J. Brody (P62035)
                                                  VARNUM LLP
                                                  Bridgewater Place
                                                  333 Bridge St. NW, Suite 1700
                                                  P.O. Box 352
                                                  Grand Rapids, MI 49501-0352
                                                  ajbrody@varnumlaw.com