UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**AIRPRO DIAGNOSTICS, LLC**, a
Florida limited liability company,

       Plaintiff,

v.

**DREW TECHNOLOGIES, INC**., a
Michigan corporation, **OPUS IVS,
INC**., a Delaware corporation,
**AUTOENGINUITY, LLC**, an
Arizona limited liability company, and
**BRIAN HERRON**, an individual,

       Defendants.
and

OPUS IVS, INC.

       Defendant/Counter-Plaintiff,

v.

AIRPRO DIAGNOSTICS, LLC

       Plaintiff/Counter-Defendant.

Case No. 22-12969-LVP-EAS

Honorable Linda V. Parker

Magistrate Judge: Elizabeth A.
Stafford

---

## PLAINTIFF'S RESPONSE TO DEFENDANT OPUS IVS, INC'S MOTION FOR CONTRACTUAL ATTORNEYS' FEES AND COSTS

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES..........................................................................iii

COUNTER-STATEMENT REGARDING COMPLIANCE WITH LR 7.1 ...........v

COUNTER-STATEMENT OF ISSUES PRESENTED ...........................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

I.      INTRODUCTION ........................................................................1

II.     FACTUAL BACKGROUND..........................................................2

III.    LAW AND ARGUMENT................................................................5

        A.      OPUS LACKS STANDING TO ENFORCE THE PROVISIONS OF THE
                MPA. ...............................................................................5

        B.      MICHIGAN LAW TREATS CONTRACTUAL ATTORNEYS' FEES AS
                DAMAGES REQUIRING AN AFFIRMATIVE CLAIM....................................8

        C.      OPUS IS NOT A PREVAILING PARTY......................................................11

        D.      EVEN IF OPUS HAS SOME PREVAILING PARTY STATUS AND COULD
                ENFORCE THE ATTORNEYS' FEE PROVISION IN THE MPA AS A
                NON-PARTY, THE MPA'S FEE CLAUSE DOES NOT REACH THE
                ENTIRE CASE. .....................................................................12

        E.      OPUS IS NOT ENTITLED TO ALL OF ITS COSTS AND EXPENSES FOR
                WHICH IT IS SEEKING REIMBURSEMENT. ...............................................14

        F.      AN EVIDENTIARY HEARING IS REQUIRED TO RESOLVE DISPUTED
                FACTUAL    ISSUES    BEARING    ON    ENTITLEMENT    AND
                APPORTIONMENT..........................................................17

IV.     CONCLUSION..............................................................................19

# INDEX OF AUTHORITIES

## Cases

*148133 Canada, Inc. v. Global Gallery, Inc.,*
  08-14343, 2009 WL 3270507 (E.D. Mich. October 5, 2009) ............... vii, 17

*Blum v. Witco Chem. Corp.,*
  829 F.2d 367 (3d Cir. 1987) .......................................................................18

*D'itri v Hobbs,*
  315869, 2015 WL 339769 (Mich. Ct. App.  January 27, 2015) ........... vii, 17

*Dryvit Sys., Inc. v. Great Lakes Exteriors, Inc.,*
  96 F. App'x 310 (6th Cir. 2004) ........................................................... vii, 10

*Healthcall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.,*
  632 F. Supp. 2d 676 (E.D. Mich. 2009) .......................................................14

*Johnson Controls, Inc. v. Hunt Const. Group, Inc.,*
  2004 WL 3323606, Not Reported in Fed. Supp. (2004) ..............................12

*Klapp v. United INS Grp Agency, Inc.,*
  468 Mich. 459, 663 N.W.2d 447 (2003) ......................................................15

*Mardale Specialty Foods, LLC v. Ventura Foods, LLC,*
  06-cv-11744, 2008 WL 11504511 (E.D. Mich. Jan. 8, 2008).......................14

*MSY Capital Partners, LLC v. Premier Car Wash Co.,*
  356268, 2022 WL 2182191 (Mich. Ct. App. June 16, 2022).......................11

*Nelson v. I.Q. Data Int'l, Inc.,*
  767 F. Supp. 3d 482 (E.D. Mich. 2025) .............................................. vii, 6, 7

*Ovens, LLC v. Quality Acquisitions,*
  2003 WL 22442786 (Mich. Ct. App. Oct. 28, 2003) (unpublished)...... vii, 10

*Pontiac Country Club v. Waterford Twp.,*
  299 Mich. App. 427, 830 N.W.2d 785 (2013) ..................................... vii, 11

*Pransky v. Falcon Group, Inc.,*
  311 Mich. App. 164, 872 N.W.2d 367 (2015) .............................. vii, 8, 9, 10

*Simmons v. Debottis*,
　　857 F.2d 1475 (6th Cir. 1988) ........................................................................14

*Travelers Property Cas. Co. of America v. Peaker Services, Inc.*,
　　306 Mich. App. 178, 855 N.W.2d 523 (2014) ..............................................15

*Wesley Corp. v. Zoom TV Products*
　　*17-10021, 2020 WL 1482503 (E.D. Mich. Mar. 27, 2020)* ........... vii, 8, 9, 10

*Whitesell Corp. v. Whirlpool Corp.*,
　　1:05-cv-679, 2010 WL 1875508 (W.D. Mich. May 10, 2010) .............. 17, 18

## **Statutes**

28 U.S.C. § 1828 ......................................................................................................17

28 U.S.C. § 1920 ......................................................................................................16

28 U.S.C. § 1923 ......................................................................................................16

MCL 15.271 ..............................................................................................................16

MCL 324.12114 ........................................................................................................16

MCL 445.1580 ..........................................................................................................16

MCL 493.112 ............................................................................................................16

MCL 600.2401 ..........................................................................................................16

MCL 600.2591 .................................................................................................... 16, 17

MCL 600.2961 ..........................................................................................................16

## **Other Authorities**

Black's Law Dictionary (10th Ed 2014) ...............................................................15

iv

## <u>COUNTER-STATEMENT REGARDING COMPLIANCE WITH LR 7.1</u>

Counsel for Opus called and emailed counsel for AirPro on October 24, 2025, seeking concurrence in the relief sought in Opus's Motion.  Counsel for AirPro responded to counsel for Opus inquiring as to the basis for Opus's motion:

---

**From:** Brody, Adam J. <ajbrody@varnumlaw.com>
**Sent:** Friday, October 24, 2025 10:54 AM
**To:** William Stapleton <wstapleton@hooperhathaway.com>
**Cc:** Hermiz, Ziyad I. <zihermiz@varnumlaw.com>; Parnham, Francesca L. <flparnham@varnumlaw.com>; Nelson Hughes <nhughes@wyrick.com>; Samuel A. Slater <sslater@wyrick.com>
**Subject:** RE: Air-Pro Diagnostics v Opus IVS et al, Case No. 22-12969

Bill,

Thanks for your email.  I would appreciate a little more detail as we consider your request for concurrence.

First, is the amount you are seeking 100% of the attorney fees Opus incurred in connection with the case, including fees incurred in defending against AirPro's claims unrelated to the MPA and in prosecuting Opus's counterclaims?  Or does this figure represent some type of pro-rata apportionment of a larger amount of fees?  Also, can you give me some detail on what makes up the $60k-plus in costs you plan to request?

Thank you.

Adam

---

Counsel for Opus responded as set forth below:

---

Adam,

The amount of attorney fees is substantially all of the fees from the Michigan case.

The costs will be detailed in the Motion but include things like e-discovery, transcripts, and travel.

Thanks.
Bill

---

For the reasons set forth herein, counsel for AirPro did not concur in the relief sought.

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

1.      Are Defendants entitled to essentially all of their attorney fees incurred in both defending against AirPro's three affirmative claims and pursuing Opus's two counterclaims, where (1) only one of the four Defendants – Drew Technologies – was a party to the contract that provides for the recovery of attorney fees; (2) that contract was not assignable to Opus without AirPro's consent, which was not given; (3) regardless, no Defendant asserted a claim for attorney fees as part of a damages claim, as required by Michigan law; (4) Opus was not the "prevailing party" in the entire case; and (5) two of AirPro's affirmative claims, and both of Opus's counterclaims, were completely distinct, both factually and legally, from the contract claim on which the request for attorney fees is solely based?

> Opus's Answer:  Yes.
> AirPro's Answer:  No.

2.      Is Opus entitled to recover 100% of all Defendants' out of pocket expenses incurred in connection with this case, even though both Michigan and federal law specifically limit such recovery to "taxable costs" incurred in connection with the litigation, and where such expenses necessarily related in large part to claims and counterclaims other than the claim regarding the contract providing for the recovery of costs?

> Opus's Answer:  Yes.
> AirPro's Answer:  No.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

In accordance with Local Rule 7.1(d)(2), AirPro identifies the following cases

as the controlling and most appropriate authority for the relief sought:

*148133 Canada, Inc. v. Global Gallery, Inc.,* Case No. 08-14343; 2009 WL 3270507 (E.D. Mich. October 5, 2009).

*Blum v. Witco Chem. Corp.*, 829 F.2d 367 (3d Cir. 1987).

*D'itri v Hobbs,* No. 315869, 2015 WL 339769 (Mich. Ct. App. January 27, 2015).

*Dryvit Sys., Inc. v. Great Lakes Exteriors, Inc.*, 96 F. App'x 310, 311 (6th Cir. 2004).

*Nelson v. I.Q. Data Int'l, Inc.*, 767 F. Supp. 3d 482 (E.D. Mich. 2025).

*Ovens, LLC v. Quality Acquisitions,* 2003 WL 22442786, at *15 (Mich. Ct. App. Oct. 28, 2003) (unpublished).

*Pontiac Country Club v. Waterford Twp.*, 299 Mich. App. 427, 437, 830 N.W.2d 785, 792 (2013).

*Pransky v. Falcon Group, Inc.*, 311 Mich. App. 164, 874 N.W.2d 367 (2015).

*Wesley Corp. v. Zoom TV Products*, No. 17-10021, 2020 WL 1482503 (E.D. Mich. Mar. 27, 2020).

## I.      <u>INTRODUCTION</u>

Opus's motion for contractual attorneys' fees and costs should be denied, for several reasons.

First, Opus's motion ignores the fact that the Mutual Party Agreement ("MPA") on which its request is based was between AirPro and a different Defendant – Drew Technologies.  Opus therefore lacks standing to enforce the fee-shifting clause in the MPA, to which it is not a party, and which is expressly non-assignable without AirPro's written consent, which was not given.

Second, contractual fee-shifting under Michigan law is treated as damages and must be pleaded and proven via an affirmative claim; neither Opus nor Drew Technologies ever did so, nor did they even request attorneys' fees or costs in connection with the parties' summary judgment briefing.

Third, even if it had the right to assert a claim for fees and costs under the MPA, Opus fails to qualify as a "prevailing party" across this "legal action," given the fact that AirPro prevailed on both of the claims asserted by Opus in its counterclaim.  In other words, where there are two prevailing parties, there are, in fact, none for purposes of fee-shifting.

Fourth, the MPA cannot possibly be read to authorize the recovery of fees incurred by all four Defendants in litigating the two non-MPA claims brought by AirPro or Opus's two unsuccessful counterclaims.  Rather, if any fees are awarded

at all, they must be limited to those fees incurred in connection with the defense of AirPro's claim under the MPA, which was both factually and legally distinct from the other claims at issue in this case.

Finally, under both Michigan and federal law, the MPA's reference to "costs" means taxable court costs, not every cent of out-of-pocket expenses incurred by Defendants in connection with the litigation.  Despite this, Opus has demanded reimbursement of over $60,000 in expenses, which even Opus's generic descriptions (*i.e.*, e-discovery vendor costs, deposition transcripts, and travel for depositions) reveal do not qualify as taxable court costs.

In sum, Opus's motion should be denied in full; at most, only taxable costs should be considered, consistent with Michigan and federal law.

## II.    <u>FACTUAL BACKGROUND</u>

On December 8, 2022, AirPro filed its three-count Complaint against Defendants Drew Technologies, Inc. ("Drew Technologies"), Opus IVS, Inc. ("Opus"), Autoenginuity, LLC ("AE"), and Brian Herron, Opus's CEO.  *See* ECF No. 1.  AirPro brought two of the three claims against all four Defendants: (1) tortious interference with AirPro's business expectancy and (2) unfair competition.  *Id.* at PageID.15-17.  AirPro also brought a breach of contract claim against *only* Defendant Drew Technologies, alleging breach of the MPA between Drew Technologies and AirPro.  *Id.* at PageID.15-16.  For each of its three claims, AirPro

sought entry of a judgment,' along with costs, interest and attorneys' fees. *Id.* at PageID.15-17.

On October 12, 2023, Opus filed its "Answer & Counterclaims." *See* ECF No. 21. Opus's Answer also includes a set of "Affirmative and Additional Defenses" to AirPro's claims. *See id.* at PageID.416-420. Although Defendants deny that AirPro is entitled to costs and attorneys' fees, neither the Answer nor the Affirmative and Additional Defenses raise any specific entitlement by Defendants to contractual attorneys' fees and costs under the MPA. *See id.* at PageID.403-420. For its Counterclaims, Opus brought two counterclaims against AirPro, alleging that AirPro breached the End User License Agreement ("EULA") between Opus and AirPro, and that AirPro unfairly competed with Opus. *Id.* at PageID.34-37. Importantly, Opus did not bring any affirmative claim for breach of the MPA or that it was entitled to costs and attorneys' fees with respect to the MPA (nor could they since they weren't a party to the MPA). Furthermore, the EULA does not include an attorneys' fees provision. ECF No. 21-3. Opus only made a general request in its Prayer for Relief following its Counterclaims that "the Court award Opus its reasonable attorneys' fees, expenses and all costs incurred in this action." *See* ECF No. 21 at PageID.439.

On February 18, 2025, AirPro and Defendants filed cross-motions for summary judgment. *See* ECF Nos. 53, 54 (*see also* Defendants' responses and

3

replies in relation to same at ECF Nos. 61, 63). Importantly, nowhere in any of these pleadings (motion, response, reply) does Opus request, let alone mention, that the Court award Opus its costs and attorneys' fees in connection with the MPA. *Compare with* ECF No. 47-14, PageID. 1479; Rule 30(b)(6) Dep. of AirPro 10:6-25, 11:1-18; (setting forth AirPro's five categories of damages, including "Costs and Attorneys' Fees" as set forth in Exhibit 6 of the Rule 30(b)(6) Dep. of AirPro depicted

| Category of Damages | | | Amount |
|---|---|---|---|
| Replacement and Transition Costs | Total AE Proline Devices Ordered Cost ($875) | 1738 | $ 1,520,750.00 |
| | Shipping Combined ($50 each way) | $ 100.00 | $ 173,800.00 |
| | Labor (each tool) | $ 238.00 | $ 413,644.00 |
| | New Scan Tool Costs (for replacing AE with other tool) | $ 1,006.25 | $ 1,748,862.50 |
| | Training Costs Per Technician | $ 500.00 | $ 75,000.00 |
| | Development cost (Dev, Meetings, Analysis)200 hrs | $ 250.00 | $ 50,000.00 |
| | Training additional 50 for Support Staff | $ 500.00 | $ 25,000.00 |
| | OEM Subscriptions | | TBD |
| | Loss of technician efficiency | | TBD |
| Loss of Business | Disgorgement of Profits (result of competition) | | TBD |
| | Loss of Customers (AirPro → OPUS) | | TBD |
| Loss of Reputation | Harm to industry reputation | | TBD at trial |
| Loss of Value of AirPro | Loss of Deals | | TBD on disclosure |
| Costs and Attorneys Fees | | | TBD |
| | | Total | $ 4,007,056.50 |

here: ).

The Court considered the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56 and dispensed with oral argument based on the briefing. *See* ECF No. 65. On September 29, 2025, the Court granted AirPro's Motion for Summary Judgment as to Opus's counterclaims; the Court also granted Defendants' Motion for Summary Judgment as to AirPro's claims. *See* ECF No. 65.

On October 27, 2025, Opus filed its motion for attorney fees citing the MPA between *Drew Technologies* and AirPro as its basis for its entitlement to attorney fees. *See* ECF No. 67. The MPA provides that:

> The prevailing Party in any legal action brought before any state or federal court of competent jurisdiction shall be entitled to an award by such court of such prevailing Party's reasonable attorneys' fees and costs from the non-prevailing Party in any such legal action.

*See* ECF No. 1-2, PageID.25 at ¶ 20. Here, the MPA's fee clause runs between the parties to the MPA *only* (i.e. Drew Technologies and AirPro) and there is no language extending fee-shifting to affiliates, officers, or successors absent express consent. In fact, the MPA specifically states that it cannot be assigned without the express written consent of the other party. *See* ECF No. 1-2, PageID.25 at ¶ 14.

## III.    LAW AND ARGUMENT

### A.    OPUS LACKS STANDING TO ENFORCE THE PROVISIONS OF THE MPA.

The record confirms that Drew Technologies and AirPro negotiated the terms and executed the MPA. *See* ECF No. 1-2. None of the other Defendants (Opus, AutoEnginuity, and Herron) are parties to the MPA, they did not participate in negotiating its terms, and they are not third-party beneficiaries or assignees of its fee provision. *See id.* There is no language in the MPA that extends fee-shifting to affiliates, officers, or unrelated entities. *See id.*

As a matter of Michigan contract law, contractual provisions are strictly construed and do not confer rights on non-signatories absent clear language. *Nelson v. I.Q. Data Int'l, Inc.*, 767 F. Supp. 3d 482, 492 (E.D. Mich. 2025) ("The Michigan Supreme Court has long recognized '[a] fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written.'  This is based on a strong public policy that "competent persons shall have the liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.'  Where the terms of a contract are unambiguous, 'courts must enforce the terms of the contract as written – neither implying what is absent nor excising what is present.'").  Opus, AutoEnginuity, and Herron therefore lack standing to enforce the MPA's provisions and have no basis to recover fees thereunder.

Further, the MPA contains an express non-assignment clause that reads: "This Agreement shall not be assigned by either Party without the express written consent of the other Party."  *See* ECF No. 1-2, PageID.25 at ¶ 14.  The provision's consent requirement controls each party's right to control to whom fee exposure may be assigned.  Any attempt by Opus to stand in the shoes of Drew Technologies for purposes of fee-shifting must therefore satisfy the MPA's condition precedent—AirPro's express written consent.  Absent that consent, Opus cannot rely on the MPA's fee clause.

6

Opus has not identified any express written consent from AirPro permitting assignment of the MPA or its remedies.  Where a contract prohibition is clear (in this case, the express prohibition of assignment without the counterparty's written consent), Michigan courts enforce that prohibition according to its terms. *Nelson*, 767 F. Supp. 3d at 492.  The MPA fee provision is a term of contract, and only a party (or assignee) may invoke it.

However, as Defendants acknowledged, even Drew Technologies would not be able to sue on the MPA. Pursuant to Defendants' Answer:

> Drew Technologies, Inc. merged into Opus on December 31, 2020, as evidenced by the Certificate of Merger attached hereto as Exhibit A.  AutoEnginuity, LLC also merged into Opus on December 31, 2020, as evidenced by the Certificate of Merger attached hereto as Exhibit B.  Thus, AutoEnginuity and Drew no longer exist and can no longer sue or be sued.

*See* ECF No. 21, at PageID.404 n.1

To the extent Opus contends that post-execution corporate transactions (including mergers involving Drew Technologies and AutoEnginuity) conveyed the MPA's rights to Opus by operation of law, the MPA's non-assignment clause forecloses that argument.  Courts enforce anti-assignment clauses according to their terms; they protect each party's bargained-for right to control to whom obligations and exposures run.  Absent AirPro's express written consent—which Opus has not

identified—Opus cannot stand in Drew Technologies' shoes to invoke the MPA's fee clause.

**B.     MICHIGAN LAW TREATS CONTRACTUAL ATTORNEYS' FEES AS DAMAGES REQUIRING AN AFFIRMATIVE CLAIM.**

Defendants are also not entitled to recover attorneys' fees because they never pleaded or pursued an affirmative, standalone claim for contractual fee-shifting. Michigan adheres to the American Rule, under which each party bears its own attorneys' fees absent statutory, court rule, common-law, or contractual authorization. *Pransky v. Falcon Group, Inc.*, 311 Mich. App. 164, 193-94, 874 N.W.2d 367 (2015). When a contract provides for fee-shifting, Michigan courts treat the resulting fee entitlement as a species of contract damages that must be sought and obtained through a claim on the contract, not via a *post hoc* request embedded in motion practice or raised after judgment. *Id.* at 194.

Two decisions underscore the controlling principle and its application here: the Michigan Court of Appeals' decision in *Pransky v. Falcon Group, Inc., supra* (vacating a contractual fee award where the prevailing party failed to file a counterclaim for breach to recover fees as damages) and the Eastern District of Michigan's decision in *Wesley Corp. v. Zoom TV Products* (recognizing that, under Michigan law, attorneys' fees awarded under a contract are damages, not costs, and must be pursued accordingly). *Pransky*, 311 Mich. App. at 164; *Wesley Corp.*, No. 17-10021, 2020 WL 1482503, at *2 (E.D. Mich. Mar. 27, 2020) (explaining that "the

8

party seeking the award of attorney fees as provided under the terms of an agreement must do so as part of a claim against the opposing party").

As the Michigan Court of Appeals explained in *Pransky*, an award of attorneys' fees pursuant to a contractual provision "constitutes general damages" recoverable only by suing to enforce the agreement's fee clause "as it would for any other contractual term." *Pransky*, 311 Mich. App. 194. In that case, the trial court awarded contractual fees to the prevailing defendant after granting summary disposition. *Id.* at 195. However, the Court of Appeals vacated the fee award because the defendant had not brought any counterclaim under the contract seeking damages, and held the trial court therefore lacked the authority to enter a money judgment for contractual fees as part of a post-judgment proceeding. *Id.*

> By entering an order requiring Pransky to pay Falcon Group's attorneys' fees, the trial court in effect entered a judgment against Pransky on a claim that was never brought. A trial court may not enter judgment on a claim that was not brought in the original action in the guise of a post-judgment proceeding.

*Id.* The teaching of *Pransky* directs that contractual fee-shifting is remedial in nature and must be pleaded and pursued as contract damages through a properly joined claim; it cannot be grafted onto a defense victory through a motion.

The Eastern District of Michigan follows the same rule when applying Michigan law. In *Wesley Corp. v. Zoom TV Products*, the court addressed a post-judgment motion to recover contractual attorneys' fees following a favorable ruling

of their motion for summary judgment. *Wesley Corp. v. Zoom TV Prods.*, No. 17-10021, 2020 WL 1482503, at *2 (E.D. Mich. Mar. 27, 2020); *Dryvit Sys., Inc. v. Great Lakes Exteriors, Inc.*, 96 F. App'x 310, 311 (6th Cir. 2004) (finding the plaintiff was precluded "from bringing its claim [for fees] in [a] separate subsequent action" because "the law requires them to plead or lose attorney's fees…[p]articularly regarding the dollar amount" in the original case.); *Ovens, LLC v. Quality Acquisitions,* 2003 WL 22442786, at *15 (Mich. Ct. App. Oct. 28, 2003) (unpublished) (refusing to consider the defendant's claim for contractual attorney fees because it was not originally pleaded). The court found squarely that the defendants were precluded from recovering contractual attorneys' fees "because the fact remains that Defendants failed to file a claim to recover their fees in the instant case. *Pransky* instructs that Defendants cannot recover contractual attorneys' fees under these circumstances." *Id.* at *3.

Read together, *Pransky* and *Wesley* establish the governing principle that a party seeking contractual attorneys' fees must assert and prove a contract claim for those damages in the ordinary course, and not raise fees in a post-judgment motion. Because Opus never made any affirmative claim for attorneys' fees *under the MPA*, or even raised it in its summary judgment briefing, there is no legal basis to award Opus (a non-party to the MPA) any contractual attorneys' fees, particularly those incurred defending the MPA claim.

**C.**    **O<span style="font-variant:small-caps">PUS</span> I<span style="font-variant:small-caps">S</span> N<span style="font-variant:small-caps">OT A</span> P<span style="font-variant:small-caps">REVAILING</span> P<span style="font-variant:small-caps">ARTY</span>.**

The Court's granting of summary judgment in AirPro's favor on Opus's counterclaims is an outcome that defeats Opus's assertion that it "prevailed" across the "legal action."  Michigan courts look to whether a party's position improved overall as a result of the litigation.  *Pontiac Country Club v. Waterford Twp.*, 299 Mich. App. 427, 437, 830 N.W.2d 785, 792 (2013) (finding no prevailing party status because both parties lost on their respective claims, and thus, with no improved position, the [defendant] was not a prevailing party despite the fact that "the [defendant]'s position did not deteriorate as a result of the [plaintiff]'s petition, but neither did its position improve…").

Opus has not shown that its position improved as a result of the litigation.  At best, Opus's position did not worsen.  In a case where a party's position neither deteriorates nor improves, courts often find no prevailing party.  *Id.* at 438; *MSY Capital Partners, LLC v. Premier Car Wash Co., LLC*, No. 356268, 2022 WL 2182191 (Mich. Ct. App. June 16, 2022) (upholding the trial court's finding "that neither party prevailed in full and therefore neither was entitled to attorney fees").  Here, AirPro obtained summary judgment on all of Opus's counterclaims.  *See* ECF No. 65.  Opus only avoided liability while simultaneously losing its own claims.  *See id.*  Avoiding liability alone, while losing counterclaims, does not improve Opus's

legal position in a way that meets the prevailing-party threshold when viewed across the litigation.

Outside of a case from a state court in Delaware (which obviously does not govern here), Opus relies primarily on the *Johnson Controls* case to argue that it should be considered the "prevailing party." *Johnson Controls, Inc. v. Hunt Const. Group, Inc.*, 2004 WL 3323606, Not Reported in Fed. Supp. (2004). There, the defendant was deemed to be a "prevailing party" because the plaintiff obtained "no relief whatsoever" on its affirmative claims. *Id.* Of course, by that logic, AirPro is also the prevailing party, because Opus obtained "no relief whatsoever" on its own affirmative claims. And when the question is whether one entity or another in such a situation is the prevailing party in connection with a "legal action" – as it is under the language of the MPA – the answer must be neither. Indeed, that is precisely the answer mandated by the substantive Michigan law cited above.

D.   **EVEN IF OPUS HAS SOME PREVAILING PARTY STATUS AND COULD ENFORCE THE ATTORNEYS' FEE PROVISION IN THE MPA AS A NON-PARTY, THE MPA'S FEE CLAUSE DOES NOT REACH THE ENTIRE CASE.**

As acknowledged by Defendants' counsel, Opus is now seeking to recover all fees incurred across the entire case by all Defendants, including fees related to claims asserted by AirPro that were unrelated to the MPA (and for which there is no right to fees, contractual or otherwise), and fees incurred in connection with Opus's own counterclaims, on which Opus did not prevail and for which, even if Opus had

12

prevailed, it would not be entitled to fees.  That approach contravenes principles of fee recovery under Michigan law and the MPA, as the fee provision applies to the prevailing party in a legal action under the MPA between the contracting parties (*i.e.* Drew Technologies and AirPro only).

To begin, AirPro pleaded two non-MPA claims: unfair competition and tortious interference, against all defendants.  Those tort and competition claims do not arise under the MPA, are not based on duties created by the MPA, and do not trigger the MPA's fee provision.  *See* ECF No. 1.  As pled, those claims concern conduct after Opus/Drew acquired AutoEnginuity and concerns about marketing, EULA implementations, competitive practices, and alleged interference—none of which is tethered to the MPA's confidentiality and use restrictions.  *See* ECF No. 1. Further, AirPro's MPA claim focuses *narrowly* on Drew Technologies' alleged misuse of confidential information disclosed under the MPA.  As such, any time counsel devoted to defending and litigating those non-contract claims, and with respect to Defendants who were not parties to the MPA, must be excluded from any contractual fee award limited to the MPA.

Separately, Opus's own counterclaims, for alleged breach of the EULA and common-law unfair competition, are unrelated to the MPA.  They arise from a separate software license and alleged marketplace conduct, and neither brings with it an entitlement to fees, even if Opus had prevailed, which it did not.  Most

13

importantly, the MPA's fee clause simply cannot be read to entitle a <u>non-party to the MPA</u> to recover attorneys' fees incurred in the unsuccessful prosecution of counterclaims that had nothing at all to do, factually or legally, with the MPA or claims arising thereunder. Accordingly, the fees incurred by Opus to bring its unsuccessful, unrelated counterclaims are not recoverable and must be omitted from the Court's consideration. *See Mardale Specialty Foods, LLC v. Ventura Foods, LLC*, No. 06-cv-11744, 2008 WL 11504511 (E.D. Mich. Jan. 8, 2008) (upholding the court's denial of fees and costs incurred litigating counterclaims that were dismissed with prejudice); *Simmons v. Debottis*, 857 F.2d 1475 (6th Cir. 1988) (explaining that, if a party prevails on only one or a portion of the claims, "a fee award based on the claimed hours [of the entire case] clearly would [be]excessive"); *Healthcall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, 632 F. Supp. 2d 676 (E.D. Mich. 2009) (explaining in the context of an insurance claim that apportionment of fees is proper "in relation to [the parties]' respective degrees of success").

### E.   OPUS IS NOT ENTITLED TO ALL OF ITS COSTS AND EXPENSES FOR WHICH IT IS SEEKING REIMBURSEMENT.

Setting aside for a moment that Opus is not entitled to any costs and attorneys' fees under the MPA for the reasons set forth in this response, Opus also claims it is entitled to recover every cent that was spent in connection with this litigation ($60,657.82) – without providing any description whatsoever of what encompassed

its "costs" besides three general categories of "e-discovery vendor costs, deposition transcripts, and travel for depositions." *See* ECF No. 67, PageID.2795-6.

However, to do that, the actual language of the MPA must be construed. In doing so: "Just as '[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory' . . . courts must also give effect to every word, phrase and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United INS Grp Agency, Inc.,* 468 Mich. 459, 468, 663 N.W.2d 447 (2003).

Because the MPA is silent as to the definition of "costs" recoverable under that provision, it is appropriate to look to dictionary definitions and other sources to determine the meaning of that phrase. *See Travelers Property Cas. Co. of America v. Peaker Services, Inc.*, 306 Mich. App. 178, 187, 855 N.W.2d 523 (2014) (noting that "when a contract fails to define a term, 'it is appropriate to consult a dictionary to determine the ordinary or commonly used meaning' of the term" and relying on the Black's Law Dictionary for guidance). Black's Law Dictionary defines the term "cost" as follows: "The charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees. – also termed *court costs.*" Black's Law Dictionary (10th Ed 2014). In other words, Black's Law Dictionary treats "costs" as synonymous to "court costs" – or taxable costs. Numerous Michigan statutes

15

provide for the recovery of "court costs" by a prevailing party.  See, e.g., MCL 600.2591; MCL 600.2961; MCL 324.12114; MCL 493.112; MCL 445.1580; and MCL 15.271.

MCL 600.2401, in turn, mandates that the recovery of any such "court costs" is governed by Michigan's statutes regarding taxation of costs.  *See* MCL 600.2401 ("When costs are allowed in any action . . . the items and amount thereof shall be governed by this chapter[.]").  As such, any statute that provides for "court costs" brings with it <u>only</u> the right to recover taxable costs.  Under Michigan's rules of contract construction, this definition must be applied to the term "court costs" found in the MPA.

This is consistent with federal law.  For example, "[t]he Supreme Court has held that 28 U.S.C. § 1920 defines the term 'costs' as used in Rule 54(d)" which "enumerates six categories of costs that may be taxed: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services

under 28 U.S.C. § 1828." *Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-cv-679, 2010 WL 1875508, at *1 (W.D. Mich. May 10, 2010).

Finally, the conclusion that "costs" are synonymous with "taxable costs" under Michigan law is bolstered by case law.  For example, in *D'itri v Hobbs,* No. 315869, 2015 WL 339769 (Mich. Ct. App.  January 27, 2015), the defendant sought recovery under MCL 600.2591, which provides for the recovery of "court costs" and reasonable attorney fees.  *See id.* at *3.  The costs actually recovered by the defendant, however, were only "taxable costs."  *Id.* at *1.  Similarly, the plaintiff in *148133 Canada, Inc. v. Global Gallery, Inc.,* Case No. 08-14343; 2009 WL 3270507 (E.D. Mich. October 5, 2009) brought suit under Michigan's Sales Representative Commission Act, which provides for the recovery of "reasonable attorneys' fees and court costs."  *Id.* at *3.  Just as in *D'itri*, the costs actually awarded were only taxable costs (consisting of filing fees and fees associated with service of the complaint). *See id.*

In light of the foregoing, the only tenable interpretation of the phrase "costs" in the MPA is that proffered by AirPro.  As such, any award of costs must be limited to the recovery of court costs in an amount to be determined.

### F.   AN EVIDENTIARY HEARING IS REQUIRED TO RESOLVE DISPUTED FACTUAL ISSUES BEARING ON ENTITLEMENT AND APPORTIONMENT.

If the Court is inclined to allow Opus to move forward with its claim for attorneys' fees and costs, despite the forgoing legal and factual hurdles that it cannot

17

overcome, the Court should nevertheless hold an evidentiary hearing prior to awarding any fees or costs, to determine the amount of any award. As courts have recognized, an evidentiary hearing is required "where the court cannot fairly decide disputed questions of fact without it." *See Blum v. Witco Chem. Corp.*, 829 F.2d 367, 377 (3d Cir. 1987). While some fee applications may be decided on affidavits, this is not one of them.

First, at best for Opus, an evidentiary hearing is necessary for further factual development on Opus's claimed entitlement to fees and costs. For example, Opus has not even attempted to apportion its fee request in any way, and *at most*, Drew Technologies would only be entitled to some apportioned fee amount, which Drew/Opus would be required to specifically substantiate. *See infra*, Section III.D.

In addition, Opus has not provided any documentation in support of its claimed "costs" beyond a generalized list of expenses incurred. *See infra*, Section III.E; ECF No. 68, PageID.2952-53. Many items appear to be non-taxable litigation expenses, such as e-discovery vendor charges, travel, meals, and hosting fees, that are not automatically recoverable as "costs" absent proof of contractual or statutory entitlement. *Whitesell Corp.*, 2010 WL 1875508, at *1. An evidentiary hearing is required, at minimum, to take evidence on the entitlement, nature, and purpose of these fees and expenses and to test the credibility and completeness of Opus's limited submissions.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, this Motion should be denied.

Respectfully submitted,

Dated:  November 10, 2025

By:  <u>  */s/ Adam J. Brody*               </u>
Adam J. Brody (P62035)
Ziyad I. Hermiz (P72236)
Francesca L. Parnham (P87300)
VARNUM LLP
Bridgewater Place
333 Bridge St. NW, Suite 1700
P.O. Box 352
Grand Rapids, MI 49501-0352
ajbrody@varnumlaw.com
zihermiz@varnumlaw.com
flparnham@varnumlaw.com

19

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on the date below, I electronically filed **Response To Defendants' Motion For Contractual Attorneys' Fees and Costs** and this **Certificate of Service**, with the Clerk of the District Court using its CM/ECF System, which will then electronically notify ECF participants registered to receive notice via the CM/ECF electronic filing system.

Dated:  November 10, 2025

                           /s/ Adam J. Brody _____
                           Adam J. Brody (P62035)
                           Ziyad I. Hermiz (P72236)
                           Francesca L. Parnham (P87300)
                           VARNUM LLP
                           Bridgewater Place
                           P.O. Box 352
                           Grand Rapids, MI 49501-0352
                           (616) 336-6000
                           ajbrody@varnumlaw.com
                           zihermiz@varnumlaw.com
                           flparnham@varnumlaw.com

28144489

20